UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIM BALL PONTIAC-BUICK-GMC, INC.

          Plaintiff,

      -vs-              08-CV-761C

DHL EXPRESS (USA), INC., et al,

          Defendants.

---

## BACKGROUND

This breach of contract action was brought as a class action. Plaintiff, on behalf of itself and others similarly situated, seeks to recover damages from defendants for the alleged improper application of jet fuel surcharges for retail shipping services delivered by ground transportation. The parties agreed to file cross-motions for partial summary judgment regarding the interpretation of the contract at issue prior to plaintiff's filing of a class certification motion. Plaintiff filed its motion on February 10, 2009 (Item 19), and defendants filed their cross-motion on March 12, 2009 (Item 20). Plaintiff filed a reply/response on April 13, 2009 (Items 21-24), and defendants filed a reply on April 28, 2009 (Item 27). The court determined that oral argument was unnecessary. For the reasons that follow, the cross-motions are denied.

## FACTS

According to the parties' statements pursuant to Local Rule 56.1, defendant DHL is a shipping company that transports packages for a fee by motor vehicle and airplane. Plaintiff is an automobile dealership that has used DHL for shipping services. The parties

have submitted DHL's 2008 Rate Guide[1] and additional documents in support of their positions.

DHL's 2008 Rate Guide provides information regarding DHL's various shipping services. On Page 2 of the Rate Guide, "U.S. Domestic Shipping" services are noted to include DHL Same Day, DHL Next Day: 10:30 A.M., 12:00 PM and 3:00 PM, DHL Second Day, DHL Ground, DHL Shipready, and DHL Smartmail. Each of the "Domestic Services" are further described on Page 4 of the Rate Guide. For example, "DHL Next Day 10:30 AM" is described as providing "[g]uaranteed delivery by 10:30 a.m. the next business day." "DHL Ground" provides "[d]oor-to-door delivery throughout the U.S. . . . in 1-6 business days." This method of shipment is said to "offer increased savings without decreased service features. We guarantee your packages receive the same attention and careful handling that you value with our Air Express services, including tracking and delivery details."

On Pages 7 and 8 of the Rate Guide, the customer is instructed on "DETERMINING DOMESTIC RATES." First, the customer chooses "the service option your shipment requires"–either DHL Next Day, Second Day, or Ground. The customer must then calculate the weight and size of the package and determine the DHL Rate Zone of the destination. Finally, the customer can find the rate from tables included in the Rate Guide.

The Rate Table for DHL Ground delivery service on page 14 of the Rate Guide contains a description of DHL Ground service and a guarantee that "your packages receive

---

[1] Plaintiff has submitted DHL's 2008 "Retail Rate Guide" effective September 1, 2008 (Item 19, Att. 2, Tab B, Exh. 9), while defendant has submitted the 2008 "Standard Rate Guide" effective January 6, 2008 (Item 20, Att. 2, Tab A, Exh. 1). The two documents appear to be identical in all material respects.

the same attention and careful handling that you value with our express services, including tracking and delivery details." On Page 35 of the Rate Guide, entitled "FEES," DHL advises its customers that "Air Express shipments are assessed a fuel surcharge which is indexed to the [U.S. Gulf Coast] kerosene-type jet fuel index. Ground shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. Of Energy's on-highway diesel fuel index."

On Page 37 of the Rate Guide, DHL domestic shipping services are categorized as either "Same Day," "Time Definite," or "Day Definite." "DHL Ground," a "Day Definite" delivery service, is described as a way to "[s]ave money on your routine shipments with guaranteed door-to-door delivery in 1 to 6 business days, depending on the origin and destination of your shipment."

DHL's fuel surcharge terms are described in a document entitled "Current Indexed Fuel Surcharge" (Item 19, Att. 2, Tab B, Exhs. 2, 3; *see also* Item 20, Att. 2, Tab A, Exh. 2). "DHL utilizes an indexed fuel surcharge based upon the fuel prices published monthly by the U.S. Department of Energy." *Id.* The "Air Express and International indexed surcharge calculation is linked to the monthly rounded average of the U.S. Gulf Coast (USGC) price" for kerosene-type jet fuel, while the "Ground Delivery Service indexed surcharge calculation is linked to the monthly rounded average" of the national price for diesel fuel. *Id.* There are two fuel surcharge tables, one for "DHL Air Express Services" and the other for "DHL Ground Delivery Service."

The parties have also submitted examples of the waybills DHL uses to ship packages. There is a waybill labeled "GROUND DELIVERY SERVICE" (Item 20, Att. 2, Tab A, Exh. 3) and another which is used for "NEXT DAY" and "SECOND DAY" shipments

3

(Item 20, Att. 2, Tab A, Exh. 4). It is not disputed that DHL reserves the right to ship packages by air or ground transportation.

In a letter dated November 28, 2006, DHL notified its customers that its rates would increase for "Domestic Air Express and International Express products by 3.9 percent" while "DHL Ground Service will increase by an average of 4.9 percent" (Item 20, Att. 2, Tab B, Exh. 3).

## DISCUSSION

Summary judgment may be granted where it is shown that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor). When deciding cross-motions for summary judgment, the court analyzes each motion on its own merits, drawing all reasonable inferences in the light most favorable to the nonmoving party. *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

A motion for summary judgment may be granted in a contract dispute only when the contractual language on which the moving party's case rests is found to be wholly unambiguous and to convey a definite meaning. *See Compagnie Financiere de CIC et de*

4

*L'Union Europeene v. Merrill, Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157-58 (2d Cir. 2000). Ambiguity is defined in terms of whether a reasonably intelligent person viewing the contract objectively could interpret the language in more than one way. *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993). To the extent the moving party's case hinges on ambiguous contract language, summary judgment may be granted only if the ambiguities may be resolved through extrinsic evidence that is itself capable of only one interpretation, or where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party's case. *See Compagnie Financiere*, 232 F.3d at 158.

"The determination of whether a contract term is ambiguous is a threshold question of law for the court." *Walk-In Medical Centers, Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987). "'An ambiguity exists where the terms of a contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 173 (2d Cir. 2004) (quoting *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London*, 136 F.3d 82, 86 (2d Cir. 1998)) (internal quotation omitted).

Plaintiffs contend that the contract does not allow defendants to assess a jet fuel surcharge on shipments that travel by ground transportation. They argue that the terms "Air Express" and "Ground" denote the method of transportation. Defendants contend that

"Air Express" is a term of art, and includes all domestic shipping options with the exception of "Ground Delivery." Thus, they argue that the contract allows them to assess jet fuel surcharges to all "Air Express" shipments, including Next Day delivery, regardless of the mode of transport. Following this reasoning, defendants contend that diesel fuel surcharges apply only to "Ground Delivery" shipments, not shipments delivered by ground transportation.

A review of the contract and related documents indicates that DHL does not use "Air Express" as a category of shipping services in its Rate Guide. Shipping options are categorized in the Rate Guide as "Domestic" or "International," or "Same Day," "Time Definite," or "Day Definite." DHL does not advise its customers that "Air Express" is a category of shipping that includes Same Day, Next Day, and Second Day options or that a jet fuel surcharge will be assessed to all Same Day, Next Day, and Second Day shipments, even when they are shipped by ground transportation. The waybill used for Next Day or Second Day shipments does not indicate that those services are "Air Express" services. It is reasonable for a customer to believe that a Next Day shipment to a location within an hour's drive would not require transport by jet and would not be assessed a jet fuel surcharge.

Defendants admit that "Air Express" is never explicitly defined as a category of service in the contract. They state that "'Air Express Services' are defined **by implication** as services other than 'DHL Ground.'" Item 20, Att.3, p. 9 (emphasis added). Under New York law, "the fundamental, neutral precept of contract interpretation is that agreements are construed in accordance with the parties' intent, and that the best evidence of what parties to a written agreement intend is what they say in their writing." *JA Apparel Corp.*

6

*v. Abboud,* 2010 WL 103399, *5 (S.D.N.Y. January 12, 2010) (quoting *Innophos, Inc. v. Rhodia, S.A.*, 882 N.E.2d 389, 392 (N.Y. 2008). Where, as here, a contract is negotiated by sophisticated parties at arm's length:

> [C]ourts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include. Hence, courts may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing.

*Vermont Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 807 N.E.2d 876, 879 (N.Y. 2004) (internal citations and quotations omitted).

It is unclear from the contract whether "Air Express" is a category of service or refers merely to a mode of transport. It is equally unclear whether a jet fuel surcharge is properly assessed on all domestic shipments, other than Ground Delivery, regardless of whether the package travels by air or ground. Defendant wishes to use the term "Air Express" to denote all those services other than Ground Delivery, but has not done so explicitly.

Having reviewed the Rate Guide and related documents, the court finds that the term "Air Express" is ambiguous. The plain meaning of "air express" (lower case) is prompt transport by airplane, yet "Air Express" (upper case) as used in the Rate Guide could mean something else that is not explicitly defined. It is suggested that "Air Express" is a category of services or products, and this interpretation finds support in the use of the term "Air Express" in the "Fees" section of the Rate Guide. Accordingly, "Air Express" can either denote a mode of transportation, as plaintiff argues, or is used as a term of art to denote a category of services, as defendants suggest.

Moreover, the court is not convinced that the ambiguity may be resolved through the extrinsic evidence offered thus far. Plaintiff has submitted an unrelated corporate history

7

document (Item 19, Att. 2, Tab B, Exh. 4) and press release (Item 19, Att. 2, Tab B, Exh. 5) in support of its position that "Air Express" is a mode of transport rather than a category of shipping services. Each merely states that DHL provides ground and air express (lower case) service. Defendants have submitted a letter to customers dated November 28, 2006, in which DHL stated that its rates would increase for "Domestic Air Express and International Express **products.** . ." (Item 20, Att. 2, Tab B, Exh. 3) (emphasis added). To resolve ambiguity, the extrinsic evidence must itself be capable of only one interpretation. *See Compagnie Financiere*, 232 F.3d at 158. Summary judgment may be granted only where there is no extrinsic evidence that would support a resolution of these ambiguities in favor of the nonmoving party. *Topps Co. v. Cadbury Stani S.A.I.C.,* 526 F.3d 63, 68 (2d Cir. 2008). The court concludes that these documents do nothing to resolve the ambiguity in favor of either party.[2]

## CONCLUSION

The cross-motions for summary judgment are denied.

The court now finds that this case is appropriate for referral to alternative dispute resolution as provided in Section 2.1.B of the Plan for Alternative Dispute Resolution in the United States District Court for the Western District of New York (the ADR Plan). A copy of the ADR Plan, a list of ADR Neutrals, and related forms and documents can be found at http://www.nywd.uscourts.gov or obtained from the Clerk's Office.

IT HEREBY IS ORDERED that this case is referred to mediation.

---

[2] Additionally, the court finds that plaintiff's effort to apply the doctrine of *contra proferentem* is premature, as extrinsic evidence of intent was so limited. The doctrine is one of "last resort, to be invoked when efforts to fathom the parties' intent have proved fruitless." *Record Club of Am., Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271 (2d Cir. 1989). On the evidence presented, summary judgment is inappropriate.

FURTHER, no later than May 24, 2010, the parties shall confer and select a Mediator, confirm the Mediator's availability, ensure that the Mediator does not have a conflict with any of the parties in the case, identify a date and time for the initial mediation session, and file a stipulation confirming their selection on the form provided by the Court.

FURTHER, the initial mediation session shall be held no later than July 19, 2010.

FURTHER, not less than ten (10) calendar days before the initial mediation session, each party shall provide the Mediator with a memorandum in accordance with Section 5.6 of the ADR Plan.

FURTHER, the referral of this case to mediation will not delay or defer other dates established in the Scheduling Order and has no effect on the progress of the case toward trial, except that any judicial settlement conferences set forth in the Scheduling Order hereby are adjourned.

FURTHER, the Mediator shall encourage and assist the parties in reaching a resolution to their dispute, but may not compel or coerce the parties to settle.

FURTHER, pursuant to Section 5.10 of the ADR Plan, information disclosed during the mediation session shall remain confidential, and shall not be made known to any other party or this Court, without consent of the disclosing party. The Mediator shall not be called as a witness, nor may the Mediator's records be subpoenaed or used as evidence.

FURTHER, within ten (10) days of the close of each mediation session, the Mediator shall file a form "Mediation Certification" provided by the Court.

FURTHER, counsel and any unrepresented parties shall compensate the Mediator

for services rendered pursuant to this Order in accordance with Section 5.3 of the ADR Plan.

FURTHER, this Referral shall terminate on January 10, 2011. In the event that settlement is not reached, the case will progress toward trial, as scheduled.

SO ORDERED.

              \s\ John T. Curtin
            JOHN T. CURTIN
            United States District Judge

Dated: May 5, 2010
p:\opinions\08-761.april62010