UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIM BALL PONTIAC-BUICK-GMC, INC.

                                Plaintiff,

             -vs-                                    08-CV-761C

DHL EXPRESS (USA), INC., et al,

                                Defendants.

---

## BACKGROUND

Presently before the court is a motion for class certification (Item 39).[1] Plaintiff, on behalf of itself and others similarly situated, seeks to recover damages from defendants for the alleged improper application of jet fuel surcharges for retail shipping services delivered by ground transportation. In a Decision and Order dated May 7, 2010, the court denied the parties' cross motions for partial summary judgment on liability (Item 33). The motion to certify the class was filed on July 2, 2010 (Item 39). Defendants filed their response to the motion on August 9, 2010 (Item 44). The court declined to hear oral argument. For the reasons that follow, the motion to certify the class is denied.

---

[1] Plaintiff has also filed a motion to compel discovery (Item 37), a motion for leave to file a supplemental declaration in support of the motion to compel (Item 49), and has renewed its motion for partial summary judgment on liability (Item 53). As the defendants do not object to the filing of the supplemental declaration, *see* Item 51, that motion is granted. The court will address plaintiff's remaining motions following the entry of this order on class certification.

## FACTS

According to the amended complaint (Item 3), defendants, collectively referred to as "DHL," are a shipping company that transports packages for a fee by motor vehicle and airplane. Plaintiff is an automobile dealership that has used DHL for shipping services. DHL offers "Next Day," "2nd Day," and "Ground" delivery service. In its "U.S. Fees" document, DHL states that "Air Express shipments" are assessed a jet fuel surcharge, while "Ground Shipments" are assessed a fuel surcharge indexed to the United States Department of Energy's diesel fuel index. Regardless of the service category, DHL reserves the right to transport each shipment as it chooses, whether by air or ground. At all times relevant to the complaint, the jet fuel surcharge has been substantially higher than the ground fuel surcharge (Item 3, ¶¶ 35-43).

Plaintiff alleges that, pursuant to the contract, all shipments transported solely by ground are subject to the ground fuel surcharge, not the jet fuel surcharge. Plaintiff further alleges that DHL often ships "Next Day" or "2nd day" shipments by ground transportation where practicable. However, plaintiff states that DHL applies the jet fuel surcharge to these shipments in breach of the contract (Item 3, ¶¶ 45-48).

In support of class certification, plaintiff alleges that the putative class consists of

> all individuals and entities who have, at any time from 2003 to the date of any class certification order, paid DHL a *jet fuel surcharge* for package deliveries within the United States that DHL transported *solely by ground transportation*; the class *excludes* the judge, attorneys, consultants, and their respective staffs who are working on this case, DHL's employees, DHL's independent contractor delivery network, and federal, state, and local government entities.

(Item 3, ¶ 16). Plaintiff also alleges that the exact number of class members is not yet

known, but that the class is so numerous that joinder of all members is impracticable. *Id.,* ¶¶ 17-18.  Additionally, plaintiff alleges that the case involves common questions of law, specifically whether the contract allows for the assessment of jet fuel surcharges on shipments traveling solely by ground transportation. *Id.,* ¶ 19.  A common question of fact is whether the jet fuel surcharge practice amounts to a breach of contract. *Id.,* ¶ 20.  Plaintiff also alleges that its claims are typical of the class, that it will fairly and adequately protect the interests of the class, that it has engaged qualified counsel, that it has no conflicts of interest, and that it is prepared to engage in a vigorous prosecution of the case. *Id.,* ¶¶ 21-25.

Plaintiff asserts that the common questions of law and fact predominate over any questions that might affect class members individually (Item 3, ¶ 27).  It also alleges that the class action is a superior method to efficiently adjudicate the controversy as the contract is uniformly applicable to all class plaintiffs, basic contract law is uniform across the nation, and the damages issues are neither complex nor burdensome. *Id.,* ¶¶ 28-32.  Finally, plaintiff alleges that it knows of no other pending action against DHL seeking recovery for any class plaintiffs based on the facts alleged in the amended complaint. *Id.,* ¶ 34.  Accordingly, plaintiff alleges that the class should be certified pursuant to Fed. R. Civ. P. 23.

In further support of the motion, plaintiff submitted a declaration of Kevin Grupp, the Vice President of MVP Delivery and Logistics, Inc., and a former independent contractor of DHL. *See* Item 39, Att. 4.  Mr. Grupp stated that MVP was responsible for the local portion of the transport of DHL shipments. *Id.,* ¶ 4.  In Mr. Grupp's experience,

"a significant number of DHL's Next Day and 2nd Day shipments were transported solely by ground transportation." *Id.,* ¶ 5. He believed that information as to whether packages traveled solely by ground transportation "should be readily available to DHL" by identifying shipments that traveled to their destinations without passing through a DHL air hub. *Id.,* ¶ 7. In Mr. Grupp's experience, "all DHL Next Day and 2nd day shipments that did not travel through an air hub traveled solely by ground transportation - either through DHL's truck hubs or solely via local transportation." *Id.,* ¶ 9.

In opposition to the motion, defendant submitted a declaration of Hank Gibson, Vice President, Strategy of defendant DHL. Mr. Gibson stated that at all times relevant to this lawsuit, defendant DHL offered expedited and non-expedited domestic shipping services (Item 44, Att. 2, ¶ 7).[2] Expedited services were known as "Air Express Services" and included Next day and 2nd Day products. *Id.* Non-expedited services were referred to as "Ground Shipping." *Id.,* ¶ 8. Consistent with industry practice, defendant charged its customers a fuel surcharge linked to the price of jet fuel for Air Express services, and a surcharge linked to the price of diesel fuel for ground shipments. *Id.,* ¶ 11.

Defendant had a number of different categories of customer, including Global, National, Resellers, Field Sales, Telesales, Web Customers, Alliance, and Retail (Item 44, Att. 2, ¶ 13). Global and National customers and Resellers "negotiated tailored individual agreements with special rates and terms." *Id.,* ¶ 14. Pursuant to their

---

[2] As of January 20, 2009, defendant ceased offering domestic-only shipping services to the general public in the United States. It continues to offer international shipping for its United States customers. *See* Item 44, Att. 2, ¶ 6.

individual agreements, Resellers were allowed to resell DHL services to their own customers at rates that they determined. *Id.* Field Sales customers were called upon by sales representatives and had letter agreements or other contracts with DHL. *Id.*

Customers who used internet-based tools to ship with DHL generated their waybills online and received an itemized quote for the shipping services, as did retail customers (Item 44, Att. 2, ¶ 15). Customers using hand-written hard-copy waybills, like plaintiff, may not have received a price quote prior to sending the shipment. *Id.,* ¶ 16. Customers who used hand-written waybills represented approximately 20 to 30 percent of DHL's customers. *Id.*

Mr. Gibson stated that many of DHL's customers enjoyed non-standard fuel surcharge terms, including capped, waived, or flat rate surcharges (Item 44, Att. 2, ¶ 17). Some did not pay a separate fee, but had the surcharge embedded in their rates. *Id.* DHL's records indicate that, on April 22, 2008, plaintiff began purchasing DHL's shipping services through Unishippers, an authorized DHL reseller. *Id.,* ¶ 18. After that date, Unishippers set the rate, including any fuel surcharges, for plaintiff's shipments. *Id.*

DHL also submitted a declaration of Charles Boice, DHL's Service Quality Manager. *See* Item 44, Att. 4. Mr. Boice stated that DHL does not maintain records that reflect whether a package traveled by air or ground transportation, only "scan" data that shows when a package was picked up and delivered and its arrival and departure from a station. *Id.,* ¶ 6. Mr. Boice also stated that DHL occasionally used commercial aircraft or rerouted its aircraft due to weather. In such instances, a package may have

5

traveled by air without passing through a DHL air hub. *Id.,* ¶ 7.

## DISCUSSION

Plaintiff seeks to have the following class certified under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure:

> all individuals and entities who have, at any time from 2003 to the date of any class certification order, paid DHL a *jet fuel surcharge* for package deliveries within the United States that DHL transported *solely by ground transportation*; the class *excludes* the judge, attorneys, consultants, and their respective staffs who are working on this case, DHL's employees, DHL's independent contractor delivery network, and federal, state, and local government entities.

(Item 3, ¶ 16 (emphasis in original)).

To qualify for class certification, plaintiff must prove that the putative class meets the four threshold requirements of Rule 23(a). If those requirements are satisfied, plaintiff must also establish that the class is maintainable under at least one of the subsections of Rule 23(b). The requirements of Rule 23 must be proved by a "preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008). Additionally, courts must engage in a "rigorous analysis" to determine whether a plaintiff has met this burden. *In re Initial Public Offerings Sec. Litig.*, 471 F.3d 24, 33 (2d Cir. 2006) (quoting *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160-61 (1982)). A district judge may certify a class only after making the determination that each of the Rule 23 requirements has been met. *Id.*

To qualify for class certification, plaintiff must prove four elements by a

preponderance of the evidence: (1) numerosity, (2) commonality, (3) typicality, and (4) adequate representation. *See* Fed. R. Civ. P. 23(a). In addition to these elements, "Rule 23 contains an implicit requirement that the proposed class be precise, objective and presently ascertainable." *Bakalar v. Vavra*, 237 F.R.D. 59, 64 (S.D.N.Y. 2006). In this case, although the number of class members is not yet known, there does not appear to be a dispute regarding the requirement of numerosity. In fact, defendant admits that the proposed class "potentially includes all of DHL's customers." *See* Item 44, p. 13.

The court is not concerned that the proposed class does not contain enough members, rather that the class appears to be overbroad and not ascertainable. According to the Interstate Commerce Commission Termination Act ("ICCTA"), 49 U.S.C. § 13102(14), DHL is a "motor carrier" for the purposes of the transactions at issue in this litigation. *See Cerdant, Inc. v. DHL Express (USA), Inc.,* 2010 WL 3397501, *5 (S.D.Ohio August 25, 2010). The ICCTA provides in part that if a shipping customer wishes to contest charges originally or subsequently billed, it "must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges." 49 U.S.C. § 13710(a)(3)(B). Under the terms of the statute, any DHL customer who failed to contest a bill within 180 days may not sue. To the extent that the proposed class definition does not limit the class to those DHL customers who complied with the 180-day notice provision, it is overbroad. *See Cerdant, Inc. v. DHL Express (USA), Inc.,* 2010 WL 3397501, *supra* at *6 (class certification denied where class not limited to those customers who complied with 180-

day provision). Additionally, to the extent that the court would be required to engage in individualized factual inquiries to determine those class members who complied with the 180-day requirement, the class is not ascertainable. *Id.*

To establish commonality, plaintiff must prove that common issues of fact or law exist and affect all class members. *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. 2004). However, class certification will not necessarily be precluded by differing individual circumstances of class members; rather, "[t]he critical inquiry is whether the common questions are at the 'core' of the cause of action alleged." *Vengurlekar v. Silverline Techs., Ltd.,* 220 F.R.D. 222, 227 (S.D.N.Y. 2003) (quoting *D'Alauro v. GC Servs. Ltd.,* 168 F.R.D. 451, 456 (E.D.N.Y. 1996)). Indeed, under Rule 23(a), even "a single common question may be sufficient." *Bakalar,* 237 F.R.D. at 67 (quoting *Marisol A. v. Giuliani*, 929 F.Supp. 662, 690 (S.D.N.Y.1996)). Here, plaintiff contends that each proposed class member will assert a breach of contract claim based on defendant's form contract. If the court assumes that the class includes all of DHL's customers who paid a jet fuel surcharge on shipments transported by ground transportation, then commonality is not established. Not all of DHL's customers shipped goods according to the terms of the form contract. Some had individual agreements, some used internet-based shipping products, and some bought shipping products from resellers. The commonality requirement is thus not satisfied as the plaintiff "can not advance a collective breach of contract action on the basis of multiple contracts." *Cerdant, Inc. v. DHL Express (USA), Inc.,* 2010 WL 3397501, *supra* at *7) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.,* 155 F.3d 331, 331 (4th Cir.

8

1998)).

To establish typicality, plaintiffs must prove that each member's claims arise from the same course of events and that each class member makes similar legal arguments to prove liability. *Steinberg*, 224 F.R.D. at 72; *see also Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 337 (S.D.N.Y. 2002). "The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation." *Steinberg*, 224 F.R.D. at 72; *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59-60 (2d Cir. 2000) (putative class representative's claims are not typical if representative's claims are subject to unique defenses). Defendant contends that plaintiff's claim is not typical, as plaintiff is not a "typical" customer. Specifically, defendant states that plaintiff was a "Field Sales" customer who then became a customer of a DHL Reseller. Defendant states that plaintiff's course of dealing was distinct from other categories of customer. Additionally, although plaintiff alleges that defendant operated under a single form contract, defendant's customers had many different contractual arrangements. While plaintiff shipped its packages pursuant to defendant's standard terms and conditions, other Field Sales customers had letter agreements or used internet-based tools to generate waybills and price quotes. As plaintiff's contractual arrangement with defendants appears to be unique, it will thus be subject to unique defenses not applicable to other class members. Accordingly, the court finds that plaintiff has not proven by a preponderance of the evidence that its claims are typical of the proposed class.

To show that absent class members are adequately represented, plaintiff must prove that (1) class counsel is qualified, experienced, and generally able to conduct the litigation, *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992), and (2) proposed class representatives have no interests that are antagonistic to the proposed class members. *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996). The purpose of Rule 23(a)(4)'s adequacy requirement is "to ferret out potential conflicts between representatives and other class members." *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 141 (S.D.N.Y. 2006) (emphasis and citation omitted). Courts are to "carefully scrutinize the adequacy of representation in all class actions." *Attenborough v. Const. and Gen'l Bldg. Laborers' Local 79*, 238 F.R.D. 82, 100 (S.D.N.Y. 2006) (quoting *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968)). Factors that the court should consider to determine whether the absent class is adequately represented include: (1) whether the proposed plaintiffs are credible, *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 87 (2d Cir. 1998), (2) whether the proposed plaintiffs have adequate knowledge of the case and are actively involved, *Baffa,* 222 F.3d at 61, and (3) whether the interests of the proposed plaintiffs are in conflict with those of the remainder of the class. *Attenborough*, 238 F.R.D. at 101 (citing *Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295, 300 (S.D.N.Y. 1990)). Defendant contends that plaintiff's President and a partner at the Hodgson Russ law firm are neighbors and friends and that plaintiff is a long-standing client of the firm. Defendant further states that counsel solicited plaintiff to be the class representative, an action it deems "ethically questionable" and intended primarily to advance the interests of the

10

law firm rather than the class members. Having considered the objections of defense counsel, the court nonetheless concludes that the class is adequately represented by plaintiff's counsel.

Even if plaintiff had established the requirements of Rule 23(a), class certification would nonetheless be improper as plaintiff has failed to satisfy Rule 23(b). A class action is maintainable under Rule 23(b)(3) when "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Thus, to be certified as a Rule 23(b)(3) class, plaintiffs bear the burden of proving two elements: predominance and superiority.

The predominance requirement is much more stringent than the commonality requirement under Rule 23(a) and requires that common questions be the focus of the litigation. *See, e.g., Steinberg*, 224 F.R.D. at 73. That is, the predominance inquiry is used to test whether a class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Common questions of law and fact predominate when issues subject to generalized proof and applicable to the class as a whole predominate over, and are more substantial than, issues that are subject to individualized proof. *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 136 (2d Cir. 2001), *abrogated on other grounds by, In re IPO*, 471 F.3d 24 (2d Cir.2006). "This requirement is more demanding than the commonality requirement under Rule 23(a); thus a court must deny certification where

individual issues of fact abound." *In re Currency Conversion Fee Antitrust Litig.*, 230 F.R.D. 303, 309 (S.D.N.Y. 2004); *see also In re MTBE*, 209 F.R.D. at 349.

As plaintiff contends, breach of contract claims certainly can be appropriate for class treatment, but only where they are subject to generalized proof. *See McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 168 (S.D.N.Y. 2008). In particular, actions that involve form or uniform contracts have been recognized as being well-suited for treatment as a class action. *See Steinberg*, 224 F.R.D. at 74 ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action ...."). However, courts have denied certification even in cases that involved form contracts where numerous individual inquiries were required to determine whether a breach of the contract could be found. *See, e.g., Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 98 (S.D.N.Y. 2010); *Pastor v. State Farm Mut. Auto. Ins. Co.*, 2005 WL 2453900 (N.D.Ill. September 30, 2005), *aff'd,* 487 F.3d 1042 (7th Cir. 2007); *Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274 (W.D.Mo. 2000); *Sparano v. Southland Corp.*, 1996 WL 681273 (N.D.Ill. November 21, 1996).

Here, as stated above, plaintiff is not the typical customer and its course of dealing with defendant necessarily differs from that of other putative class members. Individual inquiries would be necessary to determine whether the class members contested the shipping charges, thus satisfying the condition precedent to suit. The court would also be required to examine the individual contractual arrangements with each proposed class member and the course of dealing between defendant and each class member to determine the application of the fuel surcharge policy in each

individual case.

Additionally, certification of a nationwide class is sought. To render certification of a proposed multi-state class action appropriate, plaintiff must credibly demonstrate through an extensive analysis of state law variances, that class certification does not present the court with "insuperable obstacles." *Adams,* 192 F.R.D. at 278 (quoting *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir. 1986), *cert. denied,* 482 U.S. (1987); *see also Barrus v. Dick's Sporting Goods,* 732 F.Supp.2d 243, 254 (W.D.N.Y. 2010) (failure to provide extensive analysis of state law variations is grounds for decertification). The court has previously determined that "Air Express "is an ambiguous term, the meaning of which must be resolved by the use of extrinsic evidence including industry practice and course of dealing. In New York, where the terms of a contract are ambiguous and susceptible of more than one meaning, the court may consider evidence outside of the contract as an aid to interpret the meaning of the language that the parties chose. *See Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993). However, courts have found class certification improper due to significant variations in the states' laws with regard to the use of extrinsic evidence. *See Bowers v. Jefferson Pilot Fin. Ins. Co.,* 219 F.R.D. 578, 584 (E.D.Mich. 2004); *Adams v. Kansas City Life Ins. Co.,* 192 F.R.D. 274, *supra.* Here, plaintiff has failed to establish that common questions of law and fact predominate, as individualized inquiries will be required for each potential class member. Additionally, given the differing standards of admissibility of extrinsic evidence, plaintiff has failed to show that the class action is the superior method with

which to resolve this action. *See Luciano v. Eastman Kodak Co.,* 2006 WL 1455477 (W.D.N.Y. May 25, 2006) (class certification improper where adjudication of breach of contract claims would require the interpretation and application of several different laws of several different states).

Finally, the court concludes that the proposed class is simply unmanageable. As stated above, the number of class members is not readily ascertainable. Plaintiff has proposed a class that includes potentially all of DHL's customers. DHL has stated that it does not maintain data from which it can be determined if a particular shipment traveled by ground or air transportation. As such an analysis cannot be reliably accomplished, the plaintiff has failed to establish the superiority of the class action to fairly and efficiently adjudicate this controversy.

## CONCLUSION

The motion for class certification (Item 39) is denied. Additionally, the plaintiff's motion for permission to file a supplemental declaration in support of its motion to compel (Item 49) is unopposed and is therefore granted.

So ordered.

\_\_\_\_\_\s\ John T. Curtin\_\_\_\_
JOHN T. CURTIN
United States District Judge

Dated: 2/28 , 2011
p:\pending\2008\08-761.dec2010