UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JIM BALL PONTIAC-BUICK-GMC, INC.,                           **DECISION**
on behalf of itself and all others similarly situated,             **and**
                                                                                     **ORDER**

                                        Plaintiff,

            v.                                                                    **08-CV-761F**
                                                                                   **(Consent)**
DHL EXPRESS (USA), INC.,
DHL WORLDWIDE EXPRESS, INC.,
DPWN HOLDINGS (USA), INC., formerly known
as DHL Holdings (USA), Inc.,

                                        Defendants.
_____

APPEARANCES:              HODGSON RUSS LLP
                                      Attorneys for Plaintiff
                                      DANIEL C. OLIVERIO,
                                      JOHN L. SINATRA, JR.,
                                      REETUPARNA DUTTA, of Counsel
                                      The Guaranty Building
                                      140 Pearl Street, Suite 100
                                      Buffalo, New York  14202-4040

                                      QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                      Attorneys for Plaintiff
                                      RICHARD I. WERDER, JR., of Counsel
                                      52 Madison Avenue, 22nd Floor
                                      New York, New York    10010

                                      DECHERT LLP
                                      Attorneys for Defendants
                                      JOSEPH F. DONLEY, of Counsel
                                      1095 Avenue of the Americas
                                      New York, New York   10036

                                      EDWIN V. WOODSOME,
                                      CHRISTOPHER S. RUHLAND,
                                      ANDREW S. WONG, of Counsel
                                      633 West 5th Street, 37th Floor
                                      Los Angeles, California   90071

## JURISDICTION

This matter is before the undersigned on consent pursuant to 28 U.S.C. § 636(c) filed May 12, 2014 (Doc. No. 104).

## BACKGROUND

This class action, pursuant to 28 U.S.C. § 1332(d), was commenced October 14, 2008.  On behalf of itself and a putative nationwide class of shippers, Plaintiff alleges Defendants ("Defendants" or "DHL") providing carrier service to Plaintiff, improperly charged Plaintiff and the class a jet fuel surcharge in connection with the Plaintiff's and the class's shipments, *i.e.*, packages, transported solely via motor vehicles, not involving air transportation in breach of the contracts entered into by the parties with respect to such shipments.  Plaintiff alleged it began using DHL's shipping services as early as 1998 when it sent business documents, primarily auto loan credit applications, to business counterparts, auto-loan finance entities, located within a 200-mile radius of Plaintiff's retail auto dealership located in Erie County, New York.  Amended Complaint ¶ 58.  According to Plaintiff, none of these shipments involved air travel to effect their respective delivery.  As a result of Defendants' alleged breaches over many years, Plaintiff seeks damages to numerous, *i.e.*, "several hundred thousand," *id.* ¶ 17, putative class members exceeding "tens of millions of dollars."  *Id.* ¶ 68.

This action was originally assigned to Senior District Judge John T. Curtin and was, prior to its transfer to the undersigned, the subject of several substantive motions. At the outset, both parties attempted to obtain partial summary judgment on the competing interpretations of the relevant documents forming the contract between the parties particularly whether such contract permitted DHL to apply a jet fuel surcharge to

Defendants' charges to Plaintiff for the shipping of Plaintiff's packages when Defendants used only ground transportation for which, according to Plaintiff, the contract authorized only a diesel fuel surcharge.  By Decision and Order, filed May 7, 2010 (Doc. No. 33) ("the May 7, 2010 D&O"), Judge Curtin denied Plaintiff's motion and DHL's cross-motion finding that DHL's 2008 Rate Guide, one of the contract documents the parties have stipulated constitutes the contract, although referencing that DHL's domestic shipping services for same and next day deliveries, and providing that DHL's "Air Express shipments" were subject to a jet fuel surcharge, did not sufficiently indicate that Air Express was meant to define a particular type of shipment service, as DHL urged, such as next day service, or simply a mode of transportation, *i.e.,* by air or ground, which Plaintiff argued would allow either a jet or diesel fuel surcharge depending on whether the package was shipped by air or ground transport or both thus creating ambiguity in the meaning of these contract terms requiring trial.  May 7, 2010 D&O at 7-8.  In reaching the conclusion that Defendants' use of the term Air Express to permit the disputed jet fuel surcharges as added to Plaintiff's invoices was sufficiently ambiguous to require trial, Judge Curtin found that extrinsic evidence would be admissible, but that such evidence as submitted by Plaintiff was insufficient to support summary judgment.  *Id.*

By Decision and Order filed March 2, 2011 (Doc. No. 58), Judge Curtin denied Plaintiff's motion pursuant to Fed.R.Civ.P. 23 ("Rule 23") for class certification ("March 2, 2011 D&O").  In denying Plaintiff's motion, Judge Curtin found, *inter alia*, that Plaintiff's claims were subject to the 180-day limitation on filing claims against an interstate motor carrier like DHL as established by the Interstate Commerce

Commission Termination Act ("ICCTA"), specifically 49 U.S.C. § 13710(a)(3)(B) ("§ 13710(a)(3)(B)"), and, accordingly, would require the court engage in excessive individual examinations of class members' claims to determine compliance with § 13710(a)(3)(B), and that the class would therefore not be readily ascertainable.  March 2, 2011 D&O at 7-8.  The court also found that because class members used a variety of shipping arrangements through DHL's individual form contracts, internet sales, and resellers, sufficient commonality of the exact contractual basis for the class claims was not established.  *Id.* at 8.

Judge Curtin further determined that because some class members had used various contractual arrangements to obtain DHL services, resulting in Plaintiff's contract and related defenses being unique, Plaintiff could not demonstrate its claim was typical of the class, March 2, 2011 D&O at 9, and that as individual inquiry would be necessary to determine whether class members' claims were timely filed, Plaintiff failed to show that the proposed class claims predominate over individual claims.  *Id.* at 12.  In addition, Judge Curtin held that variances among state law regarding the use of extrinsic evidence to resolve contractual ambiguities prevented Plaintiff from establishing that the proposed nationwide class to enforce Plaintiff's alleged contract claim was superior to individual actions as required by Fed.R.Civ.P. 23(b)(3) ("Rule 23(b)(3)").  *Id.* at 13-14.  Judge Curtin also noted that a lack of reliable information regarding the identity of putative class members rendered the proposed class not readily ascertainable, and that Defendants' lack of records necessary to establish which relevant shipments by the class were solely by ground or air transportation modes also

supported that Plaintiff had failed to establish that the proposed class was superior to individual actions, as required for certification by Rule 23(b)(3). *Id.* at 13-14.

On September 8, 2010 (Doc. No. 53), Plaintiff renewed its motion for summary judgment. In this motion, Plaintiff relied on information obtained through discovery that suggested that because DHL stated the surcharges for both jet and diesel fuel were simply a "pass through" as partial offset to DHL's rising fuel costs, DHL intended the respective surcharges to be linked with the corresponding mode of transportation actually employed by DHL for a specific package, *i.e.*, if by air, a jet fuel surcharge; if by ground, a diesel fuel surcharge. In rejecting Plaintiff's renewed motion, Judge Curtin reiterated that the intent of the parties' based from the actual language utilized in the relevant documents remained sufficiently ambiguous thus requiring reliance on extrinsic evidence to resolve the disputed construction by the trier of fact, and not on summary judgment. Decision and Order dated April 12, 2011 (Doc. No. 61) ("April 12, 2011 D&O") at 3-4. Judge Curtin further stated that any resort to the doctrine of *contra proferentem* (ambiguities in standard form contract to be construed against party providing contract) as a "last resort" must also await trial. *Id.* at 5.

On September 28, 2011, Plaintiff filed a renewed motion for class certification based on Plaintiff's proposed exclusion, from the proposed class, of customers who purchased DHL shipping services through a reseller or those for whom whose pricing did not specify one of the surcharges at issue. Judge Curtin nevertheless denied Plaintiff's renewed motion reiterating his previous finding that issues of timely objections required by §13710(a)(3)(B) to the disputed surcharges would require individualized determinations negating Plaintiff's ability to satisfy Rule 23's commonality and typicality

requirements.  Decision and Order filed February 3, 2012 (Doc. No. 86) ("February 3, 2012 D&O") at 7.  Judge Curtin also rejected Plaintiff's attempt to apply equitable tolling to the issue of class members' timely notice of any objection to the disputed DHL jet fuel surcharges.  February 3, 2012 D&O at 10.  Further, despite Plaintiffs multi-jurisdictional review of state law on the availability of extrinsic evidence, such as course of dealing and the understanding of the parties, to resolve the ambiguity in the applicable contract documents as determined by Judge Curtin, Judge Curtin nevertheless found that variations in state law regarding contract interpretation would "overwhelm the common issues subject to generalized proof and defeat predominance."  February 3, 2012 D&O at 13.

On March 21, 2012, Defendants moved for partial summary judgment seeking to limit Plaintiff's damages to billings for shipments after April 13, 2008, 180 days prior to October 10, 2008, when Plaintiff first complained to DHL about the alleged improper jet fuel surcharges, and before April 22, 2008, when Plaintiff stopped using DHL's services and began using a DHL reseller for shipment of its business documents rather than shipping directly with DHL, Plaintiff shortly thereafter transferred its business to UPS, one of Defendants' major competitors.  In granting Defendants' motion, Judge Curtin again rejected Plaintiff's contention that the 180-day notice prerequisite established by § 13710(a)(3)(B) was inapplicable to judicial proceedings, Decision and Order filed September 14, 2012 (Doc. No. 93) ("September 14, 2012 D&O") at 4, that a provision in the applicable waybill forms, DHL Exhs. H at 2, J at 2 (Doc. No. 121), providing a one-year period for a billing claim, did not waive a defense based on § 13710(a)(3)(B), and that because Plaintiff was not shown to have been subject to any improper influences or

misdirections by DHL impairing Plaintiff's ability to commence suit at an earlier time, equitable tolling was inapplicable.  September 14, 2012 D&O at 4-6.

After filing a consent pursuant to 28 U.S.C. § 636(c) in this case on May 12, 2014, the parties conferred with the undersigned on June 25, 2014 (Doc. No. 107), and initially selected a trial date for November 13, 2014 (Doc. No. 108).  On September 16, 2014, the parties again conferred with the court to discuss a bench trial in lieu of a jury trial based on the court's review of a protocol guiding preparation for a bench trial ("the protocol") the parties agreed to submit by September 26, 2014 (Doc. No. 110).  The parties accordingly submitted the protocol for the court's consideration on September 26, 2014 (Doc. No. 111).  Following its review, the court approved the protocol, which was filed September 29, 2014 (Doc. No. 112), and agreed to conduct a non-jury trial commencing December 18, 2014, including oral presentations by counsel and any testimony the parties or the court may require.  In the protocol the parties, *inter alia*, waived a jury trial and established a schedule for the submission of evidence.  Doc. No. 112 ¶ 1; ¶ 3.  Included in the schedule, the parties agreed that following filing of the various trial documents, the parties could also require, not later than December 4, 2014, the testimony of any witness who submitted any declaration on behalf of an opposing party.  *Id.* ¶ 3(c).  Neither side has made such a request and the court found no need for any in-court testimony to assist in its determination of the merits.  In accordance with the schedule established by the protocol, the following documents were filed on October 23, 2014:

- Joint Fact Stipulation (Doc. No. 115).

- Jim Ball Pontiac-Buick-GMC, Inc.'s Trial Brief (Doc. No. 114).

- Joint Deposition Designations (Doc. Nos. 116-120).
  - Exh. 28 – Jim Ball Deposition, July 29, 2010 (Doc. No. 120)
  - Exh. 29 – Gary Prieschel Deposition, July 29, 2010 (Doc. No. 119)
  - Exh. 30 – Kevin Grupp Deposition, July 30, 2010 (Doc. No. 118)
  - Exh. 31 – Hank Gibson Deposition, August 19, 2010 (Doc. No. 116)
  - Exh. 32 – Charles Boice Deposition, March 2, 2011 (Doc. No. 117)

- Joint Exhibit List (Doc. No. 121).

- Jim Ball Trial Exhibits Vol. I, Jim Ball Exhibits 1-31 and 34-35 (Doc. No. 121).

- Jim Ball Trial Exhibits Vol. II, Jim Ball Exhibit 33 (Doc. No. 121).

- DHL's Exhibits A-J (Doc. No. 121 for Exhs. A, B, E, F, G, H, I, J) (Doc. No. 125 for Exh. C) (Doc. No. 126 for Exh. D).

- DHL's Trial Brief (Doc. No. 128).

- Declaration of Hank Gibson (Doc. No. 129).

- Declaration of Charles Boice (Doc. No. 130)

- The parties also provided courtesy copies of Jim Ball Pontiac-Buick-GMC, Inc.'s Cases and Other Authorities Cited in Trial Brief and Authorities Cited in DHL's Trial Brief.

On November 19, 2014, the following papers were filed:

- Jim Ball Pontiac-Buick-GMC, Inc.'s Brief In Opposition To DHL's Trial Brief.

- DHL's Opposition To Jim Ball's Trial Brief.

While the court was in the process of completing and issuing the instant Decision and Order, Defendants filed, on March 23, 2015, Defendants' Notice of Supplemental Authority (Doc. No. 134) attaching a copy of a Summary Order of the Second Circuit, dated March 23, 2015, in the related False Claims Act case, *Grupp v. DHL*, 14-CV-3595 ("*Grupp*"), affirming Judge Curtin's order, dated September 11, 2014, dismissing the *qui tam* complaint in the *Grupp* action for failure to state a claim. As relevant, the Second Circuit found that as DHL's jet fuel surcharge, as stated in the same contract documents

before this court, applies to a customer's shipment based on the category of DHL's expedited, *e.g.*, NEXT DAY, delivery service selected by the customer and not the actual mode, *i.e.*, airplane or truck, employed by DHL to effect delivery, plaintiffs had failed to allege an actionable fraud under the False Claims Act. *Grupp v. DHL __ Fed.Appx. ___*; 2015 U.S.App. LEXIS 4686, at *3-6 (2d Cir. Mar. 23, 2015).  In Plaintiff's response, filed March 24, 2015 (Doc. No. 135), Plaintiff asserts the Second Circuit's determination in the *Grupp* matter "does not dictate any particular result in this trial." Plaintiff's Response at 2.

## FACTS[1]

The essential facts underlying this action are not disputed.  Plaintiff is a local auto retail dealership which, prior to April 22, 2008, frequently shipped auto financing documents to Wachovia/WFS, a local finance company ("Wachovia"), located approximately 18 miles from Plaintiff's dealership, using DHL's delivery services.  Based on Judge Curtin's ruling, only two shipments by Plaintiffs, on April 10, 2008, and April 14, 2008, using DHL's services are at issue and involved two packages of documents shipped on those dates.  According to Plaintiff, as to each shipment DHL breached their contract because, in addition to the base shipping rate of $5.63 per package, negotiated by the parties, DHL invoiced Plaintiff a 22% fuel surcharge in the amount of $1.24 based on the then price of jet fuel instead of a 6.3% or $.35 fuel surcharge based on the then price of diesel fuel.  Plaintiff paid DHL's April 17, 2018 invoice, Plaintiff's Exh. 3, which billed Plaintiff for these two shipments, by check dated May 14, 2008, Plaintiff's Exh. 4.  Plaintiff's claim is predicated on the fact that because Plaintiff's packages were

---

[1]   Taken from the pleadings and papers filed by the parties.

always transported to Wachovia solely by surface, *i.e.*, truck transportation, these shipments were not, according to the relevant contract documents, subject to the higher jet fuel surcharge.  Thus, Plaintiff seeks damages for the two shipments in the amount of $1.78 representing the difference of $.89 between the $1.24 jet fuel surcharges DHL added to each of Plaintiff's invoices as opposed to the smaller, $.35, diesel fuel surcharge which Plaintiff contends DHL was obligated to charge Plaintiff by the contract.

In this case, the parties have stipulated into evidence, by a Joint Exhibit List, Doc. No. 121, *see* Stipulation No. 6(a)-(d), the following exhibits or documents as comprising the contract between them:  the two DHL Waybills for the April 10 and April 14, 2008 shipments Plaintiff requested from DHL on April 10, 2008 (Plaintiff's Exh. 1) and April 14, 2008 (Plaintiff's Exh. 2) ("the Waybills"); DHL's Standard Rate Guide 2008 Effective January 6, 2008 (Plaintiff's Exh. 5) ("DHL's Rate Guide" or "the Rate Guide"); DHL's U.S. Fees Document (Plaintiff's Exh. 6) ("DHL's U.S. Fees Document"); and DHL's 2008 Indexed Fuel Surcharge Document (Plaintiff's Exh. 8)("DHL's Fuel Surcharge Index").[2]

In each of the Waybills Plaintiff addressed its package of auto financing documents to Wachovia located in Amherst, New York, with Plaintiff selecting DHL's Next Day service with a guaranteed delivery of 3:00 PM following receipt of the packages by DHL, subject to DHL Express Terms and Conditions ("DHL Terms and Conditions"), on the reverse side of the Waybills which appear in reasonably legible form in DHL Exhibits H at 2 and J at 2, Doc. No. 121.  As relevant, the DHL Terms and Conditions provide that "'Shipment' means all documents or parcels that travel under

---

[2]   The referenced exhibits are docketed at Doc. No. 121.

one waybill and may be carried by any means DHL chooses, including air, road or any

other carrier."  Exhs. H & J, Doc. No. 121.  DHL Express Terms and Conditions also

provide that the law applicable to any dispute is that of the "country of origin of the

Shipment."  *Id.* ¶ 14.  The parties cite to and do not dispute the applicability of New York

law to the issue presented in this case.

      As relevant, the DHL Rate Guide's section referred to as "Domestic Services" is

subtitled "DHL SERVICES."  Plaintiff's Exh. 5 at 4.  The document states that DHL's "full

suite of Domestic offerings includes time-and-day-definite . . . services across the U.S.

. . .."  *Id.* (underlining added).[3]  Immediately under this statement appear five headings

describing DHL's available delivery services:  "DHL SAME DAY", "DHL NEXT DAY

10:30 AM"; "DHL NEXT DAY 12:00 PM"; "DHL NEXT DAY 3:00 PM"; and "DHL 2ND

DAY."  *Id.*  For each category of delivery service, the associated text appearing

immediately below the headings guarantees delivery consistent with the heading, *e.g.*,

"DHL NEXT DAY 3:00 PM" guarantees "delivery by 3:00 p.m. the next business day."

*Id.*  Following these five categories of "DOMESTIC SERVICES", is the service category

"DHL GROUND" which, according to the text immediately below, provided "Door-to-door

delivery throughout the U.S. . . . in 1-6 business days."  Below this representation, the

following text appears:  "DHL GROUND offers increased savings without decreased

service features.  We guarantee your packages receive the same attention and careful

handling that you value with our Air Express services including tracking and delivery

details."  *Id.*

      The Rate Guide also provides a detailed explanation in the Domestic Rates

Section of DHL's prices for its delivery services, Plaintiff's Exh. 5 at 9-15, by which a

---

[3]   Unless indicated otherwise all underlining is added.

customer can compute the cost of a shipment based on its weight, the DHL service

category selected by the customer such as DHL NEXT DAY 3:00 PM, and the

destination, *i.e.*, "zone." *Id.* at 11.  In this particular section the lowest cost available for

DHL service is for a letter to be delivered within Zone 2.[4]  *Id.*  The differences between

Plaintiff's Waybill charge of $5.63 and the lowest published rate in the Rate Guide,

$12.50 for NEXT DAY 3:00 PM delivery, Plaintiff's Exh. 5 at 11, results from the fact, as

explained by the parties in response to the court's request for clarification in e-mails with

counsel, Court Exh. A, that the $5.63 base charge for Plaintiff's two shipments

represents a discounted rate that had been negotiated between Plaintiff and

Defendants.  The court had requested this explanation because of the appearance of a

potential discrepancy between Plaintiff's actual Waybill charges, and the applicable

published DHL rates as appearing in the Rate Guide. DHL agreed with this explanation

but added that "the record does not support a conclusion that DHL's contract terms are

non-negotiable."  E-mail to the court from Catherine Carlisle, Esq., dated February 10,

2015.  Court Exh. A.  The published Domestic Rates for DHL GROUND service are

substantially lower than those applicable to, for example, the DHL NEXT DAY 3:00 PM

service:  $4.20 versus $16.50, for a one pound package going to Zone 2.  Plaintiff's

Exh. 5 at 11; 14.  The Rate Guide's explanation of DHL GROUND includes the

statement that in providing this service DHL "Guarantee[s] that your packages receive

the same attention and careful handling that you value with <u>our</u> <u>express</u> <u>services</u> . . .."

Plaintiff's Exh. 5 at 14.

---

[4]   Further explanation of the "Zones" is available at the DHL website, Rate Guide at 8, and is not provided in the record.

The Rate Guide further addresses the subject of DHL's "Fees," Plaintiff's Exh. 5 at 35, and begins with the statement that "[e]xcept where noted, fees are applicable to all services – Domestic and International, Ground and Air Express – with the exception of DHL SAME DAY, DHL Global Forwarding, DHL GlobalMail<sup>TM</sup>, and DHL Solutions." Plaintiff's Exh. 5 at 35.  This FEES section also contains a "Fuel Surcharge" sub-section and under this heading includes the following text:  "<u>Air</u> <u>express</u> shipments are assessed a fuel surcharge which is indexed to the U.S. Gulf Coast kerosene-type <u>jet</u> <u>fuel</u> <u>index</u>.  <u>Ground</u> shipments are assessed a fuel surcharge which is indexed to the U.S. Dep't. of Energy's on-highway <u>diesel</u> <u>fuel</u> <u>index</u>."  Plaintiff's Exh. 5 at 35.  A substantially identical statement appears in a document entitled "DHL-Express-U.S. Fees," Plaintiff's Exh. 6 at 2, and the "DHL 2008 Indexed Fuel Surcharge," Plaintiff's Exh. 8 at 1, stipulated as among the documents forming the contract at issue.  Joint Fact Stipulation No. 6. In each of these documents, the jet fuel surcharge table is labeled as "DHL <u>Air</u> <u>Express</u> Service<u>s</u>" and the diesel fuel surcharge table as "DHL <u>Ground</u> Delivery Service."  *Id.*

Both of Plaintiff's shipments were, as noted, delivered to the Wachovia office address located 18 miles from Plaintiff's business location, Fact Stip. No. 15, Doc. No. 115, the next day, and "more likely than  not  . . . were transported solely by ground transportation."  Joint Fact Stip. No. 14.  *See also* Plaintiff's Exh. 33 (Doc. No. 127), regarding the April 10, 2008 shipment, at DHLEXPO11826-28, lines 381-87 (DHL's customer tracking detail, at Columns Y and Z, showing only Buffalo "stops," for the package and no DHL air hub stops); Deposition of Kevin Grupp (Plaintiff's Exh. 30)

94:13-97:3; 97-9-99;15) ("Grupp Dep.")[5] (explaining DHL's practice of ground transportation for local shipments); Plaintiff's Exh. 33 (Doc. No. 127), regarding the April 14, 2018 shipment, at DHLEXPO11835-37, lines 513-519 (DHL's customer tracking detail, at Columns Y and Z, showing only Buffalo "stops" for the package, and no DHL air hub stops); Grupp Dep. at 94:13-97:3; 97:9-98:12 (explaining DHL's practice of ground transportation of holding local shipments in the same DHL facility for next day delivery by truck).  Packages that required air transport as part of its delivery route were trucked to the Buffalo airport for air shipment to a DHL air hub in Wilmington, Ohio; ground shipments were sent to a DHL truck hub in Erie, Pennsylvania for further transport.  Grupp Deposition 94:13-23, 24; 95:1-6.

Plaintiff and DHL conducted business amicably for approximately 11 years.  Joint Deposition Exhibit (Deposition of Gary Preischel, Plaintiff's Controller ("Preischel Dep."), (Doc. No. 119) 48:23-25; 49:1-5).  DHL became Plaintiff's exclusive provider during the period 2005-2008, *id.*, 52:12-22; 59:1-4, until August 2008, when Plaintiff ceased using DHL after Plaintiff's counsel informed Plaintiff that DHL's jet fuel surcharges for Plaintiff's local shipments represented an overcharge to Plaintiff by Defendants.  *Id.* 24:12-17; 73:16-23.  Plaintiff gave DHL its exclusive shipping business, *id.*, 59:3-4, following DHL's 2005 sales presentation in which Defendants proffered a better shipping rate but without discussion of DHL's fuel surcharge.  *Id.* 62:25; 63:1-4; Deposition of James Ball, Plaintiff's Exh. 28 (Joint Exhibit) ("Ball Dep.") 76:22-23 ("I just always assumed [DHL charges] were the negotiated prices we talked about . . .").  Until 2008, when Plaintiff's counsel advised Plaintiff of the alleged fuel surcharge overcharge,

---

[5]   Kevin Grupp, a former DHL independent contractor for cartage services who did not handle Plaintiff's packages, Grupp Dep. 6:22-24, is the plaintiff in a related False Claims Act case pending in this court against DHL, *United States ex rel. Grupp v. DHL Express (USA), Inc., et al.,* 12-CV-3829C.

Preischel Dep. 69:20-23, Plaintiff was aware DHL's fuel surcharge was included in the invoices for Plaintiff's shipping services which Plaintiff paid, *id.* 69:15-16, but did not know the details regarding the nature of the surcharge or its method of computation. *Id.*, 69:15-19.  Plaintiff accepted Plaintiff's counsel's representation without making any investigation regarding its accuracy.  *Id.* 97:18-24.  Plaintiff's new carrier, UPS, also charges Plaintiff a fuel surcharge, *id.* 98:8-10, however, Plaintiff is unaware of its details or how UPS transports Plaintiff's packages to local destinations.  *Id.* 98:11-16.

DHL charges customers using DHL's SAME DAY and NEXT DAY services a jet fuel surcharge because most shipments in this DHL delivery service category travel by air and it is impractical for DHL to allocate the amount of jet or diesel fuel used by DHL to ship for any one of the 30 million packages transported monthly by DHL.  Declaration of Hank Gibson, DHL's former Vice President of Pricing and Revenue Management ("Gibson Decl.") (Doc. No. 129) ¶ 18.  In order to guarantee SAME DAY or NEXT DAY deliveries at the stated time, *i.e.*, 10:30 a.m., 12:00 p.m., and 3:00 p.m., the vast majority of DHL's shipping activity to U.S. domestic and foreign destinations require air transportation.  Deposition of Hank Gibson (Doc. No. 116) ("Gibson Dep.") 105:21-25; 106:1.  Charging a jet fuel surcharge on DHL's delivery services guaranteeing same or next day delivery ("expedited categories of service") is consistent with industry practice, including UPS and FedEx, DHL's competitors.  Gibson Decl. ¶¶ 15, 17; Gibson Dep. (Doc. No. 116) 58:2-7 ("That's how the industry works.").  The purpose of the fuel surcharge was to provide relief to DHL from a rapid rise in the price of its jet fuel costs which it incurred in the course of the bulk of its guaranteed expedited deliveries requiring air transportation, Gibson Dep. 18:4-7; 81:1-23, and not as an increase to

DHL's base delivery prices to improve DHL's profits.  Gibson Dep. 26:15-19; 27:11-22.

A review of DHL's computerized tracking information indicates Plaintiff's packages at

issue remained at a DHL Buffalo facility after pickup and were delivered to their Amherst

destination the next day.  Deposition of Charles Boice, DHL's Service Quality Manager

(Doc. No. 117) ("Boice Dep.") 152:18-25; 158:20-25; 159:2-13.

Upon pick-up by a DHL employee, or cartage DHL reseller contractor like Mr.

Grupp, customer packages are coded with destination information into a DHL computer

or "scanner" along with the selected DHL "service level," *e.g.*, NEXT DAY 10:30 AM, 12

NOON, 3:00 PM, or NEXT DAY, that indicates the "appropriate route" which the DHL

employee then "write[s] on the package."  Grupp Dep. 41:15-25.  DHL employees

reviewing the route information could override the preselected route for a package if it

appeared to be in error.  *Id.* 47:20-25; 48:1.  Packages with local destinations in the

Western New York area were not routed to outside DHL locations such as in

Wilmington, Ohio for delivery by air or a surface transportation hub such as in Erie,

Pennsylvania; instead, they were held overnight in the local DHL facility for next-day

delivery by truck.  *Id.* 96:4-20.  This procedure, according to Grupp, was employed by

DHL to deliver Plaintiff's packages to their Amherst destination.  *Id.* 98:1-11; 99:1-15.

When a package is picked up by DHL, the destination's zip code is scanned into the

DHL computer which determines routing information for the package.  *Id.* 41:15-25;

Boice Dep. 43:22-25, 44:2-7.  The DHL package tracking system, FOCUS, does not

provide information from which it can be determined that a package was transported

solely by ground transportation.  Boice Dep. 44:8-12.

UPS's Next Day Air[®] service guarantees deliveries between 8:00 a.m. and 4:30 p.m.; UPS Next Day Air[®] Freight provides guaranteed delivery by 12:00 p.m. and 5:00 p.m. for shipments exceeding 150 pounds.  DHL Exh. C (Doc. No. 122) at 11 (DHLEXP069008).  FedEx offers several delivery service options for packages and envelopes:  SameDay[®], First Overnight[®], Priority Overnight[®], and Standard Overnight[®], with guaranteed times between 8:00 a.m. and 3:00 p.m.  DHL Exh. D. (Doc. No. 121) at DHLEXO69758.  UPS imposes a jet fuel surcharge on its Next Day Air Early, Next Day Air, Next Day Air Saver, 2nd Day Air A.M., 2nd Day Air, 3 Day Air Select, and international deliveries, including, *inter alia*, pickup and residential delivery charges, without qualification as to the mode of transportation used by UPS to ship the package or envelope.  DHL Exh. E (Doc. No. 121) at 2, 3.  UPS also adds a diesel fuel Ground Fuel Surcharge to its Ground Commercial, Ground Residential, Hundredweight Ground Service, and Standweight delivery services, including, *inter alia*, pickup and delivery charges.  DHL Exh. E (Doc. No. 121) at 1, 3.  UPS Ground Commercial, Residential and Hundredweight services guarantee delivery to 50 states and Puerto Rico based on a scheduled date.  DHL Exh. C at 12.  FedEx charges a jet fuel surcharge for its FedEx Express[®] services; a diesel-fuel surcharge is added for FedEx Ground services.  DHL Exh. D at 10, n. 1, 116 (referring to FedEx Express Terms and Conditions for "these delivery services," *viz.* FedEx Same Day and "Overnight," *i.e.*, "next business day" deliveries) *see* DHL Exh. D at 122 (FedEx Express Terms and Conditions cover FedEx Same Day, FedEx First Overnight, Priority Overnight, and Standard Overnight delivery services); DHL Exh. D at 11 (referring to calculating weight of a "FedEx Express[®] package;" 12 (describing FedEx Ground[®] services as providing delivery within 1-5

business days); DHL Exh. F at 1 (jet fuel surcharge applies to "FedEx Express

services"; diesel fuel surcharge applied to "FedEx Ground services").

## DISCUSSION

Plaintiff's breach of contract claim is predicated on Plaintiff's contention that in

assessing the jet fuel surcharge on DHL's Air Express delivery services, the contract

between the parties required that such surcharge would be applied only to deliveries

that used air transportation in whole or in part.  Plaintiff's Trial Br. at 1.  Because

Plaintiff's shipments subject to the Waybills relied solely on local truck transportation,

Plaintiff contends DHL fuel surcharges should have been based on the DHL diesel fuel

index which the contract documents associate with ground transportation.  *Id.* ("*Jet fuel*

*surcharges* were to be applied to shipments going by *air,* and *diesel fuel surcharges*

were to be applied to shipments travelling solely by *truck.*") (italics in original). [6]  Plaintiff

acknowledges DHL's defense is based on DHL's position that "there was a blanket

surcharge for higher service levels, and that 'Air Express' really means [DHL's] 'Next

Day,' [delivery service] regardless of how a shipment travelled."  Plaintiff's Trial Br. at 2.

However, Plaintiff maintains "DHL's assertion that a jet fuel surcharge does not apply to

jet fuel, but instead to [DHL's] levels of service, is wrong."  Plaintiff's Trial Br. at 2

(bracketed material added).[7]

Plaintiff's argument rests primarily on its construction of the contract documents

that because, according to DHL's U.S. Fees Document, Plaintiff's Exh. 6, DHL's jet fuel

surcharge applies to DHL's "Air Express shipments," Plaintiff's Trial Br. at 3, a term not

---

[6]   Unless indicated otherwise, all material in italics are in the original.
[7]   Unless indicated otherwise, all bracketed material is added.

defined in the DHL Waybills, Plaintiff's Trial Br. at 4, DHL's jet fuel surcharge should have been applied to Plaintiff's two shipments only if either was shipped at least in part by air, which they were not; and, if not, then the proper surcharge was the diesel fuel surcharge as the packages could be and, according to Plaintiff, Plaintiff's Trial Br. at 6 (citing Joint Fact Stip. No. 14, DHL tracking records, Plaintiff's Exh. 33, and deposition testimony), were in fact transported solely by truck.  Plaintiff's Trial Br. at 5-6.  Plaintiff maintains that although the 2008 DHL Rate Guide lists DHL's domestic delivery service options, DHL did not "articulate" in the Rate Guide that the term "Air Express is a 'collection' of  available service levels (*i.e.*, contractual delivery times) . . . which  . . . *always* entitles it [DHL] to apply a jet fuel surcharge."  Plaintiff's Trial Br. at 16.  Plaintiff also argues that DHL's attempt to define the term Air Express by reference to the Rate Guide's description of DHL's various categories of delivery services is defeated by the presence of inconsistent uses of the Air Express term within the text of the Rate Guide. Plaintiff's Trial Br. at 17.  For example, in comparing DHL's "express services" to DHL GROUND service, the Rate Guide does not refer to Air Express, Rate Guide at 4; Plaintiff's Trial Br. at 17; Plaintiff points to the same issue in the Rate Guide's explanation of DHL GROUND fees.  *Id.* (referencing the Rate Guide at 14).

In short, Plaintiff argues that in the contract documents, particularly the Waybills and the Rate Guide, DHL could have, but did not, directly state it would charge a jet fuel surcharge on all "Next Day and Second Day services," regardless of the manner of shipping the package.  Plaintiff's Trial Br. at 16.  Plaintiff further contends that because DHL's Fuel Surcharge Table, Plaintiff's Exh. 8, states that both jet fuel and diesel fuel surcharges apply to all DHL products including DHL Next Day shipments, without

distinction as to the category of DHL shipping service, the diesel fuel surcharge applies when no air transportation using jet fuel was utilized.  Plaintiff's Trial Br. at 20-21.  Plaintiff also relies on DHL's Ground Tariff, Plaintiff's Exh. 13, a 2006 document, for the proposition that DHL's use of the term Ground refers to a mode of transportation, *i.e.*, "ground transportation," not a type of unexpedited delivery service.  Plaintiff's Trial Br. at 21-22.  However, the Joint Fact Stipulation No. 6 does not include this document among the four relevant documents forming the contract between the parties.  Plaintiff therefore asserts that "[u]nder the plain meaning of the form contract, DHL has agreed to charge a 'jet fuel' surcharge for shipments transported in whole or in part, and a 'diesel fuel' surcharge for shipments transported solely by ground.  Plaintiff's Trial Br. at 13.

Should the court determine upon trial, consistent with Judge Curtin's finding as a matter of law in denying summary judgment, that the contract presented significant ambiguity based on the absence of any explicit definition in the contract of the term Air Express regarding the applicability of DHL's jet fuel surcharge to Plaintiff's invoices, Plaintiff alternatively asserts that the contract terms, particularly the Air Express term, are ambiguous requiring extrinsic evidence be evaluated to determine the contract's correct meaning.  Plaintiff's Trial Br. at 22 ("Even if DHL's Contract is Ambiguous, . . . [Plaintiff] Prevails on the Extrinsic Evidence.").  In support of Plaintiff's alternative contention, Plaintiff also relies on nine pieces of alleged extrinsic evidence, including a DHL corporate history (Plaintiff's Exh. 10), two DHL press releases (Plaintiff's Exhs. 11, 26), a 2006 sales promotion letter to Plaintiff, DHL Same Day service marketing material (Plaintiff's Exh. 14), DHL's "Historic Fuel Surcharge" Document (Plaintiff's Exh. 15), DHL's Cost Pass Through Documents (Plaintiff's Exhs. 17-22), DHL Vice President

Hank Gibson's Deposition Testimony (Plaintiff Exh. 31) and An Adverse Inference

Based On An Absence of DHL Drafting History re: Air Express and Jet Fuel Terms

(Plaintiff's Exh. 27 at 5).  Plaintiff's Trial Br. at 22-32.

Plaintiff also contends that DHL may not rely upon a so-called course of

performance argument, *viz.* that Plaintiff's failure to object to the jet fuel surcharges

during the 11-year period DHL provided delivery services to Plaintiff indicates Plaintiff's

acceptance of DHL's interpretation of the contract terms relating to the surcharge, DHL

Trial Br. at 13-15, as Plaintiff was unaware of how its packages were transported, air or

surface, and did not understand how DHL's fuel surcharges were implemented.

Plaintiff's Trial Br. at 30-31.  Plaintiff further asserts that even if UPS or FedEx, DHL's

chief competitors, employ jet fuel surcharge business policies similar to DHL's at issue

in this case, such usage is irrelevant to Plaintiff's case because what Plaintiff points to

are significant dissimilarities between DHL's surcharge practices and those of its chief

competitors and therefore does not support DHL's assertion that its fuel surcharges

were consistent with industry practice.  Plaintiff's Trial Br. at 31-32.  Finally, Plaintiff

urges the court apply the *contra proferentem* doctrine to DHL's form contracts because

the alleged ambiguity, should the court so determine, regarding the scope and meaning

of the terms of the contract at issue, was created by DHL.  Plaintiff's Trial Br. at 33-44

("If the contract documents themselves and the litany of extrinsic evidence are not

enough, the Court may apply *contra proferentum* to construe the ambiguity in DHL's  . .

. form contract against DHL.") (citing cases).

For its opposition, DHL contends that the text and interrelationship of the

documents forming each shipping contract between the parties demonstrate that where

a customer like Plaintiff selected one of DHL's NEXT DAY shipment service options, as

did Plaintiff in this case, a jet fuel surcharge would be added to DHL's standard shipping

charge applicable to the selected shipping option such as DHL NEXT DAY 3:00 PM, the

service option selected by Plaintiff for the two shipments at issue, regardless of the

specific mode, air or surface, of transport used by DHL to effect delivery, and does not

concede that any relevant terms of the contract documents are ambiguous.  DHL Trial

Br. at 1 ("the documents that make up the contract between  . . .  [the parties] indicate

that Next Day shipments will be assessed a jet fuel surcharge"); id. at 2 ("DHL charged

– and customers [including Plaintiff] agreed to pay – different fuel surcharges based on

the type of [shipping] product the customer purchased.").  Like Plaintiff, DHL relies on

the terms of the 2008 Standard Rate Guide, the Waybills, DHL's U.S. Fees Document,

and the DHL 2008 Indexed Fuel Surcharge Document as provided in Stipulated Facts

No. 6.  DHL Trial Br. at 3.

        DHL relies particularly on the express terms of the Standard Rate Guide which

advise customers that "Air Express shipments" are surcharged based on DHL's jet fuel

index, DHL Trial Br. at 4 (citing Plaintiff's Exh. 5 at 35) while DHL's GROUND shipments

are surcharged based on DHL's diesel fuel index, id. (citing Plaintiff's Exh. 5 at 35).

DHL stresses that as used in the DHL Fuel Surcharge Document (Plaintiff's Exh. 8 at 1),

the jet fuel surcharge table is titled "DHL Air Express services," the word "services"

being in the plural thereby referencing "DHL's Next Day and 2nd Day services."  DHL

Trial Br. at 5 (citing Plaintiff's Exh. 8 at 1 and Gibson Decl. ¶ 18 (averring that the jet fuel

surcharge applies to DHL's "expedited categories of service [i.e., NEXT DAY, 2ND DAY]"

because this practice was customary in the package shipping industry, "most" DHL

shipments were transported by air, and that it would be "impossible" for DHL to apportion a diesel and jet fuel surcharge between the surface and air transport components associated with any of the 30 million packages DHL shipped monthly)). DHL also relies on the text of the two Waybills Plaintiff employed in selecting DHL's NEXT DAY 3:00 PM service for the two packages at issue which reserved to DHL the right to ship a customer's package however DHL determined. DHL Trial Br. at 6 (citing Stipulated Facts No. 6(a); DHL's Exhs. H at 2; J at 2 ("'Shipment' means all documents or parcels that travel under one waybill <u>and</u> <u>may</u> <u>be carried</u> <u>by</u> <u>any</u> <u>means</u> <u>DHL</u> <u>chooses</u>, <u>including</u> <u>air</u>, <u>road</u> or any other carrier.")). Thus, DHL maintains "[n]othing in the waybills suggest that if DHL transported an Air Express package by truck, it could only assess a diesel fuel surcharge," DHL Trial Br. at 10; DHL Opposition Br. at 1 ("The contract does not say that DHL will assess Jim Ball fuel surcharges based on (or to what extent) packages moved by plane or truck"), and that as Plaintiff has not "identifie[d] a specific provision of the parties' contract DHL alleged breached," DHL Opposition Br., Plaintiff has failed to "meet its burden of proof." *Id.*

DHL further argues that its construction of the contract terms at issue is consistent with DHL's intent to structure its pricing based on practical business considerations, DHL Trial Br. at 11-13, the 11-year course of performance between the parties during which Plaintiff, as a "sophisticated business entity," DHL's Trial Br. at 14, "never once challenged DHL's fuel surcharges," *id.* at 13-14, and that DHL's jet fuel surcharge policy was consistent with industry practice, *id.* at 15-16, under which both UPS and FedEx tied a jet fuel surcharge to expedited shipping services denominated, like DHL, by the term "Air," and a diesel fuel surcharge linked to a substantially less

speedy and less expensive guaranteed delivery service referred to by UPS and FedEx

as a Ground option.  DHL Opposition Br. at 15-16 n. 5-6 (citing DHL Exh. C (UPS Rate

and Service Guide) at 11-12; DHL Exh. D (FedEx Service Guide) at 12.

     The principles guiding the court's analysis of the parties' competing constructions

of the relevant contract documents are well-established.  Like a jury trial, in a non-jury

trial, the plaintiff must establish its claim by a preponderance of evidence.  *See*

*Rodriguez v. Home Depot U.S.A., Inc.*, 2014 WL 1757513, at *8 (E.D.N.Y. Apr. 30,

2014) (dismissing personal injury claim after bench trial where plaintiff failed to sustain

burden of proving negligence by a preponderance of the credible evidence (citing *Ward*

*v. Cunard Line, Ltd.*, 1986 WL 11197, at *6 (S.D.N.Y. Sept. 26, 1986) (same))).  In

assessing the correct meaning of a contract comprised of more than one document,

"[u]nder New York law, all writings forming part of a single transaction are to be read

together."  *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998) (citing *Gordon v.*

*Vincent Youmans, Inc.*, 358 F.2d 261, 263 (2d Cir. 1965) ("*Gordon*") ("[I]t is good sense

and good law that these closely integrated and nearly contemporaneous documents be

construed together." (internal quotation marks omitted) (quoting *Kurz v. United States*,

254 F.2d 811, 812 (2d Cir. 1958) (*per curiam*)));  *see also F.H. Krear & Co. v. Nineteen*

*Named Trustees*, 810 F.2d 1250, 1258 (2d Cir. 1987) (citing *Gordon* for the proposition

that under New York law all writings forming a single transaction must be read together

);  *Nau v. Vulcan Rail & Construction Co.*, 36 N.E.2d 106, 110 (N.Y. 1941) (finding that

agreements at issue "were executed at substantially the same time, related to the same

subject-matter, were contemporaneous writings and must be read together as one.").[8]

The parties stipulate that DHL's Waybills, U.S. Fees Document, 2008 Indexed Fuel

---

[8]   As the parties cite to New York law, the court finds they have stipulated to its application.

Surcharge Document, and 2008 Standard Rate Guide form the contract between them and the court is therefore required to construe the relevant provisions of each document.  However, as explained, Discussion, *supra*, at 17-23, the parties contest the meaning of terms "Air" and "Ground" as used in the contract documents.  Particularly, Plaintiff argues that the term "Air" means transportation by airplane and Ground means transportation by truck.  Plaintiff's Trial Br. at 1.  Thus, according to Plaintiff, where DHL ships a package solely by truck involving no use of jet fuel but only diesel fuel, DHL's diesel fuel surcharge should apply to the charge for the shipment.  Plaintiff's Trial Br. at 5 (if package not transported "*by air*" . . .  DHL's contract required it to charge the lower diesel fuel surcharge.")  DHL on the other hand argues that the terms Air Express and Ground refer, respectively, to DHL's expedited shipment services, *e.g.*, NEXT DAY 3:00 PM, and DHL's GROUND service providing a 1-6 day delivery guarantee thus requiring a jet fuel surcharge be applied to the NEXT DAY expedited service options designated on the Waybills and the diesel fuel surcharge be applied to the GROUND service, one capable of performance solely or primarily by surface transportation but with a substantially longer and slower period of performance in contrast to the DHL expedited, or NEXT DAY, services.   DHL Trial Br. at 1-2.

Under New York law, an "interpretation that 'gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.'"  *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) (quoting *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985)).  *See also ISC Holding AG v. Nobel Biocare Investments N.V.,* 351 Fed.Appx. 480, 482 (2d Cir. Oct. 27, 2009) (construing, under New York law, "contract's terms, in light of the

apparent purpose of the contract as a whole . . . ." (quoting 11 Samuel Williston &

Richard A. Lord, A TREATISE ON THE LAW OF CONTRACTS § 30:7 (4th ed. 1999), and citing

*Record Club of Am. Inc. v. United Artists Records, Inc.*, 890 F.2d 1264, 1271 (2d Cir.

1989))), *Eastman Kodak Co. v. Bayer Corp.*, 576 F.Supp.2d 548, 552 (S.D.N.Y. 2008)

(court required to interpret contract in a manner "that makes sense in the context of the

entire agreement").  Further, where, as here, a party asserts the presence of an

ambiguous terms, as does Plaintiff, Trial Br. at 22 ("Even if DHL's Contract is

Ambiguous, Jim Ball prevails on the Extrinsic Evidence"), "'the entire contract must be

considered and, as between possible interpretations of an ambiguous term, that will be

chosen which best accords with the sense of the remainder of the contract.'"  *Israel v.*

*Chabra*, 537 F.3d 86, 99 (2d Cir. 2008) (quoting *Rentways , Inc. v. O'Neill Milk & Cream*

*Co.*, 126 N.E.2d 271, 273 (N.Y. 1955)).  Where the contract term at issue is ambiguous,

a court  may rely on extrinsic evidence to aid in ascertaining the parties' intent. *In re*

*Lehman Bros. Holdings Inc.,* 761 F.3d 303, 309 (2d Cir. 2014) ("Where contractual

language is ambiguous, a court may consider extrinsic evidence of the parties' intent."

(citing *Roberts v. Consol. Rail Corp.*, 893 F.2d 21, 24 (2d Cir. 1989))).  While Judge

Curtin determined for summary judgment purposes that the disputed term Air Express

as used in the DHL contract was sufficiently ambiguous, *see Walk-In Medical Centers,*

*Inc. v. Breuer Capital Corp.*, 818 F.2d 260, 263 (2d Cir. 1987) ("The determination of

whether a contract term is ambiguous is a threshold question of law for the court"), to

require trial, such finding does not preclude the court's further consideration of that

issue for purposes of the instant non-jury trial on Plaintiff's breach of contract claim.

*See Davidson v. Scully*, 173 F.3d 843, 1999 WL 220093, at *1 (2d Cir. 1999) ("law of

case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." (citing *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996)).  Moreover, it is basic that as the purpose of summary judgment is to identify issues that require trial, such identification is, in itself, not determinative of the issues so identified.  *See SSP Capital Partners, LLC v. Mandala, LLC*, 715 F.Supp.2d 443, 452 (S.D.N.Y. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 597 (1986) (citing Advisory Committee Note to Rule 56 and noting that the purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial")). Accordingly, as the parties contend at the outset the contract is not ambiguous, the court first addresses whether the disputed term in the instant contract is ambiguous requiring reliance on extrinsic evidence.

DHL's 2008 Indexed Fuel Surcharge is intended to buffer DHL against the adverse cost impact caused by "rapid rises in the cost of fuel," Gibson Dep., Plaintiff's Exh. 31, 15:6-10, a "highly variable" component of DHL's costs.  *Id.* 17:5-6 ("Our fuel costs is one of our main cost [*sic*] of serving customers.").  The DHL fuel surcharge operates not as a device to pass through the "total cost of fuel," but to "capture an unexpected variation in [the] underlying fuel costs."  *Id.* 17:11-22.  To provide for an "equitable sharing" with its customers, Gibson Dep. 32:4-5, of unexpected "increases" or "decreases" in the price of fuel, *id.* 18:5-7, the DHL Jet Fuel Surcharge Table for "DHL Air Express Services" specifies a base surcharge of 10% with a corresponding price per gallon of jet fuel of $1.75 - $1.78.  Plaintiff's Exh. 8 at 1.  The DHL surcharge table increases by .5% for each $.04 increase in the per gallon price of jet fuel, to a maximum

of 23.50% at $2.82-$2.86 per gallon of jet fuel price.  *Id.*  The DHL surcharge table for

DHL GROUND Delivery Service provides a surcharge rate of 4.5% corresponding to a

price per gallon for diesel fuel of $2.78-$2.86.  Plaintiff's Exh. 8 at 1.  The surcharge

increases by two to three tenths of a percentage point as the price per gallon of diesel

fuel increases by $.08 per gallon to a maximum of 5.8% at a price per gallon of $3.18 -

$3.26.  *Id.*  Thus, the applicable surcharge percentage to be calculated and added to a

customer's invoice for DHL NEXT DAY or 2ND DAY services is substantially higher than

the GROUND service surcharges.  No explanation as to how the increments in the

stated price per gallon of jet and diesel fuel nor the related surcharge percentages as

they appear in the DHL Air Express services and Ground service surcharge tables were

determined is provided in the record.

     DHL's jet fuel surcharges applied to DHL's Next Day services which DHL

referred to as its "Air Express or expedited services."  Gibson Dep. 53:15-17; 54:10-15.

While some of DHL's Next Day services could have been transported solely by ground

forms of transportation, some if not most are transported by both air and ground.

Gibson Dep. 55:17-25; Boice Decl. ¶ 9.  DHL's Air Express product represented a

guaranteed shorter delivery time than its GROUND service and thus the GROUND

service was a "much cheaper" way to send a package, Gibson Dep. 81:20-23, than the

available "faster" Next Day services.  Gibson Dep. 82:9-12.  Only a small percentage of

DHL deliveries involved "solely ground transportation," Gibson Dep. 105:14-17; the

"vast majority" are by plane.  *Id.*, 105:21-25; 106:1.  All of DHL's deliveries were either

solely by ground or a combination of both air and ground transportation.  Gibson Dep.

56:1-4.  DHL monthly shipped 30 million packages domestically.  Gibson Decl. 18.

Some of DHL's shipments were transported by air for cost reasons instead of being transported by truck despite the close proximity of the points of pickup and delivery. Boice Decl. ¶ 15; Boice Dep. 44:8-12 (there is no "way you can go into the system and look at shipments and determine whether they travelled solely by ground.")  Although DHL's record-keeping system provided information on a package's destination, date of travel and the "pace at which it travelled between locations," it did not record information regarding whether it "went by airplane or truck."  Boice Decl. ¶ 12.  DHL's computerized records indicate that "most" of Plaintiff's "packages travelled through one of DHL's air hubs" or through a commercial airport.  Boice Decl. ¶ 13.

Plaintiff's basic contention that the contract documents require DHL apply its jet fuel charge only where a customer's package was actually shipped wholly or partially by air and not based on the customer's selection of one of DHL's expedited delivery service options, in this case DHL's NEXT DAY 3:00 PM service as stated in the 2008 Rate Guide, Plaintiff's Exh. 5 at 5, is defeated by a fair reading of the relevant terms of the Rate Guide and the DHL 2008 Indexed Fuel Surcharge document, Plaintiff's Exh. 8 at 1.  Specifically, the Rate Guide offers the customer a variety of "Domestic Services" which include "Domestic offerings" of "time and day definite . . . services across the U.S." Plaintiff's Exh. 5 at 4.  Immediately following these representations, the Rate Guide lists these expedited services as "DHL SAME DAY," "DHL NEXT DAY 10:30 AM," "DHL NEXT DAY 12:00 PM," "DHL NEXT DAY 3:00 PM," and "DHL 2ND DAY."  *Id.* The prices or rates for these expedited services are stated in the Rate Guide, Plaintiff's Exh. 5 at 9 ("Domestic Rates range from a low of $14.80 to $594.10 for the DHL NEXT DAY 10:30 AM and DHL NEXT DAY 12:00 PM service based on destination and

package weight."). *Id.* For DHL NEXT DAY 3:00 PM, the service used by Plaintiff for the two shipments at issue, the rates stated at $12.80 for a letter and went up to $558.40. As noted, Facts, *supra*, at 11-12, Plaintiff had negotiated a base service of $5.63 for its shipments designating DHL NEXT DAY 3:00 PM service on the Waybills. In addition to its expedited – SAME DAY, NEXT DAY and 2ND DAY services—the Rate Guide also offered "DHL GROUND" service which guaranteed "delivery through the U.S. (48 contiguous states) in 1-6 business days." Plaintiff's Exh. 5 at 1. In its description of this service option, DHL stated "We guarantee your packages receive the same attention and careful handling that you value with our Air Express services, including tracking and delivery details." *Id.*

As further noted, Facts, *supra* at 12, DHL prices for these services appear in the "Fees" section of the Rate Guide, Plaintiff's Exh. 5 at 35. In this section, DHL states that its "fees are applicable to all services – Domestic and International, GROUND and Air Express . . .." *Id.* As relevant, the Fees section, under the heading "Fuel Surcharge" states: "Air Express shipments are assessed a fuel surcharge which is indexed to the U.S. Gulf Coast kerosene-type jet fuel index. Ground shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. of Energy's on-highway diesel fuel index. For details go to Fuel Surcharge Table and see Current Indexed Fuel Surcharge." The DHL 2008 Indexed Fuel Surcharge document, Plaintiff's Exh. 8 at 1, stipulated as one of the contract documents, Joint Stip. No. 6(c), reproduces two fuel surcharge tables. *Id.* One is titled "DHL Air Express Services." the other is titled "DHL Ground Delivery Service." *Id.* Each table reflects DHL's fuel surcharge percentages related to the incremental price per gallon of, respectively, jet fuel and diesel fuel, as

explained in the Fees section.  The DHL U.S. Fees Document, Plaintiff's Exh. 6 at 2, like the Rate Guide's Fees section, includes a "Fuel Surcharge" heading.  Under this heading, DHL states "Air Express shipments are assessed a fuel surcharge which is indexed to the USGC kerosene-type jet fuel index.  Ground shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. of Energy's on-highway diesel fuel index."  Thus, the question of contract construction is whether the term Air Express as used in the Fees section of the Rate Guide, Plaintiff's Exh. 5 at 35, the DHL U.S. Fees document, Plaintiff's Exh. 6 at 2, and the DHL 2008 Indexed Fuel Surcharge document, Plaintiff's Exh. 8 at 1, refers to the DHL NEXT DAY expedited services described in the Rate Guide, Plaintiff's Exh. 5 at 4, providing the basis for the fuel surcharge amount invoiced to Plaintiff, or any such expedited services offered by DHL regardless of how – by airplane or truck or motor vehicle – a customer's packages were actually transported by DHL to effect delivery.  Both a careful and common sense reading of the text and interrelationship of the relevant contract documents demonstrates that it does, for several reasons.

First, the Rate Guide's description of DHL services in describing DHL's domestic services is unambiguous in its definition of DHL's SAME DAY, NEXT DAY, 2nd DAY and GROUND delivery options as "services," not modes of transportation, *i.e.*, airplane or truck.  Second, in describing the DHL "GROUND service," the Rate Guide contrasts this delivery service option as providing a longer period of guaranteed delivery but with quality assurances similar to that applicable to DHL's "Air Express services".  Rate Guide at 4.  In the context of the entire text and structure of this portion of the Rate Guide describing in detail the scope of each DHL delivery service available to the

public, including the four Next Day services and the 2nd Day service, in contrast to the six-day slower and much cheaper GROUND service option the term "Air Express services" can only be read and understood to refer to these DHL expedited services. *Id.* The presence of a pluralized term "service*s*" reasonably and logically refers to the Next Day, expedited, service options; the singular DHL GROUND therefore refers only to the less expensive and slower delivery service option.  Otherwise, the reference to term Air Express is left without meaning, contrary to the required principle of contract construction  that such a result be avoided. *See Galli*, 973 F.2d at 149.  By the same token, the introductory text to this section of the Rate Guide directly states that all of the described DHL delivery options – SAME DAY, NEXT DAY, 2ND DAY & GROUND – are "services," not particularized modes or means of transportation, *viz.*, airplane or truck, by which these services will be provided by DHL.  Plaintiff argues that because the DHL Indexed Fuel Surcharge Document (Plaintiff's Exh. 8) states that both the jet fuel and diesel fuel surcharge apply to all DHL services, except for certain exceptions not applicable, without regard to any particular service category, that the diesel fuel surcharge must apply when only truck transports of a package were used.  Plaintiff's Trial Br. at 21.  However, Plaintiff's assertion requires that the term "Air Express services" as used in this document refers to services in the plural and thus logically references the several expedited service categories described in the Rate Guide, Rate Guide at 4, and that the diesel fuel surcharge relates only to the GROUND service option.  Plaintiff's contention therefore finds no support in the actual text of the document on which it is based.

Third, the text of the 2008 Indexed Fuel Surcharge is consistent with this construction of the relevant text of the Rate Guide.  For example, the "Jet Fuel Surcharge Table" states it applied to "DHL Air Express Services."   Plaintiff's Exh. 8 at 1. Contrary-wise, the "Diesel Fuel Surcharge Table" states it applies to the "DHL Ground Delivery Service_."  *Id.*  That the Air Express jet fuel surcharge is by its terms applicable to DHL's Air Express Services, plural, reasonably and logically means it applies to multiple DHL delivery services, not, in contrast to diesel fuel surcharges applicable to the "DHL Ground Delivery Service," a delivery option referred to by the Indexed Fuel Surcharge document in the singular and by the Rate Guide.  Rate Guide at 4.  Thus, the DHL Jet Fuel Surcharge Table's use of the term Air Express refers to the same categories of expedited DHL domestic delivery service options detailed by the Rate Guide, including NEXT DAY 3:00 PM, described in detail by the Rate Guide and the option selected by Plaintiff in filling out the Waybills, thereby requiring the application of the DHL Jet Fuel Surcharge Table to Plaintiff's invoices regardless of the actual mode of transportation used by DHL in effecting delivery of the packages, a decision explicitly reserved to DHL by the Waybills' Terms and Conditions.  If, as Plaintiff contends, the term "Air Express Services" as used in the Jet Fuel Surcharge Table does not refer to DHL's Same Day, Next Day and 2nd Day services, one is left to ask: to what does it refer?  Plaintiff's argument raises, but leaves this relevant question of contract construction unanswered.  This same question – and inherent refutation – applies equally to Plaintiff's contention, Plaintiff's Trial Br. at 16, that the phrase in the Rate Guide's description of DHL's GROUND option in comparison to DHL's "Air Express services" does not sufficiently reference the DHL expedited services described in that

section.  Although not capitalized, there can be no reasonable doubt as to what the word "services" in this section refers – the only other "services" described in this section are the DHL expedited services.

Plaintiff's attempt to parse the DHL contract's terms "services" and "shipments," Plaintiff's Opposition Br. at 2, in support of its contention that DHL's jet fuel surcharge relates solely to a mode of "shipment" via airplane and not a category of service to which the DHL jet fuel surcharge is applicable, *id.* citing the Rate Guide at 35, is similarly unavailing.  Specifically, Plaintiff contends the word "shipment" as it appears in the phrase "Air Express shipment" as used by DHL's Standard Rate Guide, Plaintiff's Exh. 5 at 35, should be construed as referring to "something transported from one place to another for a fee."  Plaintiff's Opposition Br. at 2.  Plaintiff's analysis, again, runs afoul of the general rule of contract construction, applicable to this case under New York law, that all terms of the contract be read and construed together so as to give meaningful effect to the contract as a whole.  *ISC Holding AG,* 351 Fed.Appx. at 482.  Specifically, Plaintiff's argument ignores that the introduction to the Fees section of the DHL Rate Guide begins with the statement:  **"Except where noted, [DHL] fees are applicable <u>to all</u> <u>services</u> – Domestic and International, <u>Ground</u> <u>and</u> <u>Air</u> <u>Express</u> . . ."** thereby establishing that in regard to DHL "Fees," as provided for in the Rate Guide, Plaintiff's Exh. 5 at 35, [9] the term Air Express refers to a DHL "service," not a mode of delivery or "shipment" via air or motor vehicle.  The Rate Guide's Fuel Surcharge provision, Plaintiff's Exh. 5 at 35, states that "Air Express <u>shipments</u> are assessed a fuel surcharge which is indexed to the U.S. Gulf Coast kerosene-type jet fuel index," and that "Ground <u>shipments</u> are assessed a fuel surcharge which is indexed to the U.S.

---

[9]   Bolding in original; underlining and bracketed material added.

Dept. of Energy's on-highway diesel fuel index."  To determine whether Plaintiff's

contention, Plaintiff's Opposition Br. at 2, that the term "shipment" as used in this Rate

Guide provision imposing fuel surcharges refers to a mode of transportation, *i.e.*, by air

or surface transportation, rather than a category of DHL's delivery services, *e.g.*, NEXT

DAY or DHL GROUND, is correct, it is therefore necessary as a matter of proper

contract construction, *see This Is Me, Inc.*, 157 F.3d at 143 (New York law "all writings

forming part of a single transaction are to be read together"), to read this surcharge fee

provision in relation to the Rate Guide's general description of DHL SERVICES,

Plaintiff's Exh. 5 at 5.  In this section of the Rate Guide the text describing DHL's

DOMESTIC delivery services ("Our full suite of Domestic offerings includes time and

day-definite and mail <u>services</u> across the U.S."), the Rate Guide, Plaintiff's Exh. 5 at 4,

distinguishes between DHL SAME DAY, NEXT DAY, and 2ND DAY delivery services,

and DHL GROUND delivery services.  *Id.*  As noted, Discussion, *supra*, at 28-29, in

contrast to DHL's description of DHL's GROUND delivery service, which provides

delivery within "1-6 business days," DHL's SAME DAY, NEXT DAY, and 2ND DAY

services guarantee "delivery" within significantly more limited time periods, *viz*, two days

or less, after DHL receives the customer's package.  Plaintiff's Exh. 5 at 4.  More

particularly, as the DHL SERVICES description with respect to DHL SAME DAY service

states:  "Every <u>shipment</u> is tracked every step of the way," *id.*; with respect to DHL

NEXT DAY 10:30 AM service the DHL SERVICES description states:  "Just prepare

your <u>overnight</u> <u>shipment</u> and know you are shipping with the logistics company that

meets your needs and expectations." *Id.* Similarly, DHL NEXT DAY 12:00 PM service is

promoted as a "smarter way <u>to ship</u>," and, as to DHL's NEXT DAY 3:00 PM service, the

specific DHL delivery service option upon which Plaintiff's claims are based, the Rate

Guide represents this service option as a "solid and reliable choice for time-sensitive

shipments."  *Id.*  DHL's Terms and Conditions also define "shipment" as "all documents

or parcels that travel under one Waybill . . .."  Plaintiff's Exhs. H at 2; J at 2.  Although

the terms "Air Express shipments" and "Ground shipments" appear in the Fuel

Surcharge section of the Rate Guide, Plaintiff's Exh. 5 at 35, and are used in that

section of the Rate Guide without the word "service" as a modifier, these terms – Air

Express and Ground – also appear in the introduction to the FEES section of the Rate

Guide as included in "all" DHL "services," Plaintiff's Exh. 5 at 35 ("Except where noted

fees are applicable to all services  . . .."), thus supporting that when the terms Air

Express and Ground appear in the Fuel Surcharge section of the Rate Guide, Plaintiff's

Exh. 5 at 35, they are the same DHL delivery services referred to as AIR EXPRESS and

GROUND services as those terms appear elsewhere in the Rate Guide.  Thus, given

the text and interrelationship of the relevant provisions of the Rate Guide, the court finds

that in DHL's Rate Guide, one of the key contract documents in this case, the term

"shipment" reasonably refers, depending on the specific context in which the term

appears, either to the package accepted by DHL for delivery under a Waybill

designating one of DHL's delivery service options, Rate Guide at 4 ("Just prepare your

overnight shipment . . .."); Waybills, Plaintiff's Exhs. H at 2; J at 2, to be shipped under

one of the various categories of DHL delivery service, *e.g.*, NEXT DAY 3:00 PM,

Plaintiff's Exh. 5 at 4, or GROUND, *id.*, the specific DHL delivery service category, that

a customer may designate on a DHL waybill for a particular shipment, and does not

denote a specific mode, airplane or truck, of transporting the package or "shipment," as Plaintiff argues.

This conclusion is reinforced by the fact that the Rate Guide's description of DHL GROUND defines this delivery service option by comparing it to DHL's "Air Express services," Plaintiff's Exh. 5 at 4, and by the complete absence in this section of the Rate Guide of any reference associating a specific mode of transportation – airplane or motor vehicle – with either Air Express or DHL GROUND delivery services.  As the Rate Guide's description of DHL GROUND further states:  "We [DHL] guarantee your [customer] packages receive the same attention and careful handling that you value with our Air Express services, including tracking and delivery details."  Plaintiff's Exh. 5 at 4.  Although, as DHL's former Vice-President of Pricing and Revenue Management, Hank Gibson, explained, because only a "fairly small" percentage of all DHL deliveries entail only truck transportation and the "vast majority" of DHL's shipping commitments are long distance in nature and thus likely to require air transportation, Gibson Dep. 105:21-25; 106:1; 112:19-20, nevertheless, the fact that in the Rate Guide a specific mode of shipment, air or truck, is not contractually tied to a specific DHL delivery service option – NEXT DAY or GROUND – in whole or in part, is consistent with DHL's reservation of unfettered discretion to select how – air or surface – a particular shipment is to be physically transported.  DHL Terms and Conditions, DHL Exh. H at 2; DHL Exh. J at 2.  Therefore, the court finds that when the Rate Guide's Fees provision, Plaintiff's Exh. 5 at 35, explaining that DHL Air Express and DHL GROUND "shipments" accrue a jet and diesel fuel surcharge, respectively, the term "shipments" denotes either the package to be shipped or the type of DHL service, *e.g.*, NEXT DAY or GROUND, as

selected by the customer but not a specific mode of transportation, *i.e.*, by airplane or truck, by which the shipment or delivery will be made.[10]  Nor is there any merit in Plaintiff's assertion that by stating in its brief on appeal in the related False Claims Act litigation brought by Mr. Grupp, Plaintiff's Opposition Br. at 1-2 (citing Exh. A, Defendant DHL's Brief on Appeal at 44, 46 and 48), that in DHL's contract documents the term Air Express was "not explicitly defined," DHL admitted "there is no Air Express category of services set forth in DHL's contract," thus supporting Plaintiff's construction.  *Id.* at 1. As discussed, Discussion, *supra*, at 28-33, the actual text of the relevant section of the Rate Guide describing DHL delivery services, particularly its NEXT DAY expedited services and its unexpedited GROUND services, shows that the term Air Express as it appears in that section can only be reasonably understood to refer to DHL's expedited services categories and not a particular mode or form of transportation.  This is also made abundantly clear by the Rate Guide' s Fees section and DHL Fuel Surcharge Index, both of which refer specifically to DHL's Air Express services.  Thus, although DHL has acknowledged that the Rate Guide's description of its expedited services did not "explicitly" include the term Air Express, such acknowledgment does not support Plaintiff's main contention that the Air Express term used as the basis for DHL's jet fuel surcharge is undefined.  Thus, Plaintiff's cabined construction of the Rate Guide's

---

[10]   Because the court finds that a proper construction of contract documents themselves establish unambiguously that DHL Air Express services refer to DHL's Next Day expedited services, thereby permitting DHL to add jet fuel surcharges to Plaintiff's invoices,  it is unnecessary to rely on DHL's Exh. A (Doc. No. 121) ("Exhibit A"), a March 8, 2008 Memorandum explaining DHL's default weight polices, indicating that DHL's term Air Express refers to DHL's Next Day and Second Day services.  Gibson Decl. ¶ 2; DHL Trial Br. at 12.  Plaintiff contests the admissibility of Exh. A on various grounds such as a lack of proper foundation in violation of Fed.R.Evid. 602 or as inadmissible evidence of subjective intent. Plaintiff's Opposition Br. at 2-3 (citing caselaw).  As the court does not rely on this document, it is unnecessary to address the merits of Plaintiff's objections.

provisions describing DHL's various services and related fees on this issue is supported by neither the text nor the structure of the Rate Guide's relevant provisions.[11]

This conclusion is also more consistent with DHL's business purpose to implement a system for partial recoupment of its rising fuel costs, particularly, because air transport is the bulk of its delivery business, jet fuel costs, in the absence of which DHL, as well as its competitors who also impose a jet and diesel fuel surcharge on their respective expedited delivery services, would be forced to incur potentially crippling losses.  More specifically, if Plaintiff's contention that DHL's fuel surcharge scheme by the terms of the contract attached not to Air Express service options, DHL's trade name for its expedited services, but, as Plaintiff argues, to the particular mode of shipment, air, *i.e.*, by airplane or ground, *i.e.,* truck, actually used by DHL for specific deliveries like Plaintiff's, the question, unaddressed by Plaintiff, is how the surcharge would be applied to the delivery charges invoiced to the customer.  To accept Plaintiff's construction that the particular surcharge, jet or diesel fuel, applies to the mode of transportation, particularly the fuel cost component, actually used by DHL for a particular package, rather than to the price of the service category selected, *e.g.*, NEXT DAY or GROUND, would require both a tracking of the particular shipment package, a logistical impossibility for DHL, Gibson Decl. ¶ 8, and, because delivery of DHL's package shipments typically require both surface and air transportation, an allocation of the costs of both the ground and air transportation actually used to which the applicable surcharge percentage, as set forth in DHL's jet fuel and diesel fuel surcharge indexes,

---

[11]   Plaintiff also relied on DHL's Ground Tariff, Plaintiff's Exh. 13, which links the term Ground to "ground transportation."  However, as this document is not among the contract documents stipulated by the parties as forming the contract, *see* Joint Fact Stipulation No. 6, the court does not consider it.

could be then applied and added to the customer's invoice, would also create a commercial impossibility for DHL given its system of doing business.  Gibson Decl. ¶ 8.

DHL maintains such a process would be impractical as it would require difficult calculations of distances, the type of fuel used for the ground and air transport parts of the routes used for each of the 30 million packages shipped monthly by DHL, DHL Trial Br. at 5, 17; Gibson Decl. ¶ 18; DHL's Opposition Br. at 4 (citing *In re Lipper Holdings, LLC,* 766 N.Y.S.2d 561, 562 (1st Dept. 2003) (courts should refrain from contract interpretation that would be "absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties")).  Such additional expense, would constitute commercial impracticality, Gibson Decl. ¶ 18 (applying fuel surcharge based on mode of shipment for packages "prohibitively expensive and impossible for DHL"), that would result from Plaintiff's construction exclusively tying DHL's fuel surcharges to the mode of transportation actually used for a particular package, and strongly supports DHL's contention that Plaintiff's approach represents a commercially unreasonable construction that is to be avoided in contract construction.  *SeeTiVo Inc. v. Goldwasser*, 560 Fed.Appx. 15, 19-20 (2d Cir. Mar. 17, 2014) (recognizing that under New York law a contract should not be interpreted to produce commercially "absurd" result (citing *In re Lipper Holdings, LLC*, 776 N.Y.S.2d at 562)); *see also Newmont Mines, Ltd. v. Hanover Ins. Co.*, 784 F.2d 127, 136 (2d Cir. 1986) (construing contract "'in light of the business purposes sought to be achieved by the parties and the plain meaning of the words chosen by them to effect these purposes.'" (quoting *Champion Int'l Corp. v. Continental Cas. Co.,* 546 F.2d 502, 505 (2d Cir. 1976))).

Plaintiff does not dispute that its construction would entail "difficulties of determining the percentage of each type of fuel used,"  Plaintiff's Opposition Br. at 5 n.3 ("No one argues to the contrary"); rather, Plaintiff attempts to rebut DHL's assertion of such "difficulties" by contending that DHL's failure to adjust to them is merely evidence of DHL's "breaching practice" in violation of the contract. *Id.* ("DHL's reasons for following a breaching practice do not justify the practice where the contract disallows it.")  Plaintiff's contention of course begs the question of whether the asserted "difficulties" are evidence of commercial infeasibility which aids the court, *see Newmont Mines Ltd.*, 784 F.2d at 134, in considering which of the two competing constructions represents the more reasonable one.  *See In re Lipper Holdings, LLC,* 766 N.Y.S.2d at 562.  Significantly, although Plaintiff attacks Mr. Gibson's averments, Plaintiff's Opposition Br. at 4 n. 2, on various evidentiary grounds, – including improper legal conclusions, subjective intent, and lack of relevancy –Gibson's averment that "it was impossible for DHL to assess fuel surcharges on a package-by-package basis," Gibson Decl. ¶ 18, is not contradicted by Plaintiff on such evidentiary or any other grounds.  Nor does Plaintiff dispute that the Gibson and Boice Declarations are part of the body of evidence which the court may consider in this trial.

Further, Plaintiff argues that, contrary to the testimony of Mr. Boice, DHL's FOCUS tracking system for its packages during the relevant period did not allow for the detailed tracking of packages and the allocation of jet and diesel fuel costs to a specific shipment, Boice Decl. ¶ 12 ("FOCUS  . . . did not contain information on whether a package went by airplane or truck."), the record shows DHL capable of tracking its packages, *see* Plaintiff's Opposition Br. at 4 n. 2 ("Boice's declaration is similarly

objectionable where it (¶ ¶ 9, 12) discussed DHL's records and scan codes."), pointing

to contrary evidence, *id.* (citing Plaintiff's Exh. 33, DHL computerized records showing

how Plaintiff's packages actually were handled), *id.* However, Plaintiff does not contest

Boice's testimony that DHL's system does not enable it to determine that a particular

package travelled solely by truck. *See* Boice Dep. 44:8-12 (Q: "Is there a way you can

go into the system and look at shipments and determine whether they travelled solely

by ground?" A: "No, that I am aware of."). Even if DHL could make such determination

it is basic that the fact that an obligor is capable of committing itself to certain results,

does not mean it has done so unless its agreement so provides. Plaintiff also disputes

that DHL's system would require determining the correct fuel surcharge "*before*

movement of the shipment." *Id.* at 6 n. 5. There are two problems with these

contentions. First, Plaintiff overlooks that the issue is whether DHL's surcharge scheme

is contractually tied to the mode of transportation and its associated costs, used to ship

a package, or the type of service and its published price, (expedited, *i.e.*, NEXT DAY, or

unexpedited, *i.e.*, GROUND) applicable to a particular package (*see* Plaintiff's Trial Br.

at 16 ("DHL's contract applies fuel surcharges based on the <u>mode</u> of transportation

(*e.g.*, air or ground), not based on the classification of DHL service levels (*e.g.,* NEXT

DAY, 2nd DAY, etc.)). Second, DHL's asserted need to know the shipping fuel usage

details for each package "at the outset," DHL's Opposition Br. at 4, is reasonably related

to its need to promptly and accurately bill a customer for its services, including the

applicable fuel surcharge amount, rendered immediately following delivery. The

undisputed "difficulties," if not the "impossibility," Gibson Decl. ¶ 18, of doing so inherent

in Plaintiff's construction therefore support DHL's construction as the more commercially

reasonable compared to Plaintiff's which conceivably would impose additional and expensive administrative costs not contemplated by DHL in establishing its published shipping rates thereby requiring DHL to raise its prices with a likely loss of business, or suffer debilitating losses, or both.

This explanation of the business rationale for DHL's surcharge charge scheme also answers Plaintiff's rhetorical question, Plaintiff's Trial Brief at 2 n. 2, asking why two fuel surcharges were necessary given that DHL's customers were charged more for DHL's expedited delivery services.  As discussed, Discussion, *supra,* at 36-38, DHL, as a matter of business practice, applied the jet fuel surcharge to its expedited services given that the greatest proportion of its business necessitated the use of air transportation, and used surface transportation where the guaranteed delivery time, 1-6 days, could be accomplished solely by truck within that period.  Gibson Dep. 105:20-25 (explaining shipments with destinations beyond an 8-hour truck ride required using air transport).  If, however, the delivery, under this non-expedited service option, could not be efficiently delivered solely by truck transportation within the six-day period as promised, DHL was required, by the contract, to employ air transportation to effect the guaranteed delivery at no extra charge to the customer.  Also, as noted, DHL, like its major competitors, required some degree of protection against rapid rises in the cost of jet fuel, a practical business consideration in this industry, a risk not as acute in the case of its DHL diesel fueled delivery trucks.  DHL, like its competitors, ("UPS and FedEx linked the surcharges for their expedited and unexpedited service categories in the same way [as DHL]," Gibson Decl. ¶ 17), accordingly adopted its fuel surcharge system to guide its customers in calculating their costs depending on the service category

selected by the customer, instead of incurring the burden of periodically recalculating

and republishing its general fee tables to adjust for respective future increases in its jet

fuel costs as they occurred.  That DHL found it more practical to charge its expedited

service customers a jet fuel surcharge regardless of whether their packages were

shipped solely by truck, rather than apply its diesel fuel surcharge, Gibson Decl. ¶ 12

("logistically impossible" for DHL to commit a particular mode of delivery for a package),

does not require the court to construe the contract to overrule DHL's business decision

in order to benefit this substantially smaller segment of DHL's customers including

Plaintiff.

        In sum, Plaintiff's claim is predicated on the premise that the words AIR and

GROUND in the context of the DHL contract can only mean, respectively, airplane or

motor vehicle transportation, one flawed by ignoring the fundamental rule of contract

law that a breach occurs only where an obligor, like DHL, fails to provide a obligee, like

Plaintiff, with the benefit of its bargain.  *See Ayco Co., L.P. v. Feldman*, 2010 WL

4286154, at *6 (N.D.N.Y. Oct. 22, 2010) (recognizing defendant, by breaching contract,

deprived plaintiff of benefit of bargain).  Here, DHL accepted Plaintiff's offer stated in the

Waybill for a guaranteed delivery in accordance with DHL's NEXT DAY 3:00 PM service

option and the DHL's correlative commitment to deliver Plaintiff's package as promised,

including risk of non-performance and damage to DHL's service reputation.  Thus, if

DHL had for some reason failed to perform it may be asked whether given Plaintiff's

construction of the contract, Plaintiff would have refrained from complaining that it had

paid the applicable jet fuel surcharge in addition to the base delivery charge and was

therefore entitled to assert a breach.  Plaintiff could have elected a less rapid

guaranteed delivery at a substantially lower price and without the greater jet fuel surcharge on such expedited service compared with the cost of DHL GROUND service and the associated lower diesel fuel surcharge.  Plaintiff did not do so.  Plaintiff's insistence that Plaintiff was entitled to DHL's Next Day delivery guarantee but only with a diesel fuel surcharge, if accepted, would in effect create a new category of DHL service, a guaranteed next day delivery at DHL GROUND delivery diesel fuel surcharge pricing, uncontemplated in the Rate Guide and certainly unintended by DHL.  *See In re Lipper Holdings, LLC*, 766 N.Y.S.2d at 562 (construction of contract contrary to "the reasonable expectations of the parties'" to be avoided).

Significantly, as DHL persuasively contends, DHL Opposition Br. at 1, Plaintiff points to no specific provision of the contract which DHL may be fairly said to have breached.  DHL's pricing, including its fuel surcharge scheme, covered the likelihood, assumed by DHL in offering its expedited NEXT DAY service, that this guaranteed delivery would entail both transportation by air and truck to accomplish, logistical decisions reserved to DHL by the Waybills Terms and Conditions.  Given that most of these shipments required air travel, it was reasonable for DHL to apply the jet fuel surcharge to them as both the structure and terms of the contract documents indicated DHL would do.  That DHL conceivably could have agreed to apply a diesel fuel surcharge to all deliveries in fact effected by motor vehicle rather than by air, is irrelevant, as DHL did not agree to do so.  Moreover, Plaintiff's claim ignores that DHL's competitors utilize a fuel surcharge policy substantially similar to DHL's.  *See* Facts, *supra*, at 17-18; DHL Opposition Br. at 15-16 (citing UPS Rate and Service Guide "Ground Fuel Surcharge will apply to all . . . UPS Ground commercial etc. services;"

"The Air and International Surcharge will apply to UPS Next Day Air Early etc. services." and FedEx's jet fuel surcharge apply to FedEx Express, *i.e.*, expedited services similar to DHL's)).  In sum, Plaintiff's primarily semantical  arguments find no support in the text, structure, or commercial purposes of its contract with DHL.  As such, the court finds no ambiguity warranting application of the *contra proferentem* doctrine to resolve the instant dispute.  Accordingly, the court finds Plaintiff has not established, as was its burden, by a preponderance of the evidence that Defendants breached its contract with Plaintiff as Plaintiff alleged in the Amended Complaint.

Even if the terms AIR EXPRESS and GROUND as used in the contract between Plaintiff and DHL were ambiguous, the extrinsic evidence relied upon by Plaintiff to establish that these terms refer exclusively to the mode –airplane or truck – DHL used to transport Plaintiff's packages, rather than, as DHL maintains, to the DHL delivery service category – NEXT DAY 3:00 PM – selected by Plaintiff, is unpersuasive.

- DHL Timeline Document (Plaintiff's Trial Br. at 22-23).  This 2008 summary of DHL's corporate history, Plaintiff's Exh. 10, refers to a new concept of "international air express service . . . by airplane."  Contrary to Plaintiff's view, that this statement shows DHL's use of the term air express means the mode of transportation, Plaintiff's Trial Br. at 23, the context of the statement shows it describes a new system of international air express delivery when DHL was founded, not DHL's definition of that term as used in the Rate Guide or Surcharge Fuel Index Document.  Plaintiff's reliance also overlooks the indisputable fact that all commercial delivery services involving airplane transportation must necessarily employ ground transportation to some extent.  As

such, this piece of extrinsic evidence is irrelevant.

- DHL's March 2005 Major League Baseball Press Release (Plaintiff's Trial Br. at 23).  This document, Plaintiff's Exh. 11, using the phrase "air and ground express," according to Plaintiff, shows DHL's intent to use the words "air" and "ground" as meaning modes of delivery, not categories of expedited, *i.e.*, "express" delivery service.  Plaintiff's Trial Br. at 23.  However, in proffering this evidence, Plaintiff ignores that the sentence in which the phrase on which it relies appears also refers to "logistic <u>services</u>."  *Id.* (quoting DHL 2005 Press Release re: MLB).  Thus, as with DHL's use of this term in the Rate Guide and Fuel Surcharge Index Document, the term air express is, in this document, directly tied to delivery "services" provided by DHL, and not the mode of transportation used by DHL.  Moreover, the phrase "ground express" is not a term that appears in the contract documents at issue and, as such, it is itself ambiguous and thus not probative.  Rather than supporting Plaintiff's position, the court finds this document to be more consistent with DHL's construction of the term Air Express.

- DHL's December 2006 Letter (Plaintiff's Trial Br. at 23-24).  In this letter to its customers, Plaintiff's Exh. 16, DHL describes its expedited "shipping services" without use of the term air express, an omission Plaintiff contends shows air express, as used by DHL in the contract documents, does not signify a DHL service category.  Plaintiff's Trial Br. at 24.  Although this document, as Plaintiff asserts, fails to reference the disputed air express term, the letter is quite evidently a marketing communication touting DHL's services, and its relation to the issue before the court is therefore too attenuated to provide significant

support for Plaintiff's position.  Moreover, Plaintiff's proffer ignores the footnote in

the letter stating that "all [DHL] <u>services</u> . . . are subject to DHL Terms and

Conditions as published at <u>www.dhl-usa.com</u>," which, presumably includes the

Rate Guide and Fuel Surcharge Index documents which as discussed,

Discussion, supra, at 28-33, strongly associate the term air express with the DHL

expedited delivery categories described in the letter.  As such, this piece of

extrinsic evidence fails to remove the assumed ambiguity regarding the correct

meaning of the term air express as used in the contract and does not support

Plaintiff's construction.

- "DHL Same Day" Document (Plaintiff's Trial Br. at 24).  According to Plaintiff, this

  document, Plaintiff's Exh. 14 at 2, states that because DHL will apply a gasoline

  fuel surcharge, as well as its jet fuel surcharge, to DHL's Same Day service, the

  document indicates the "air fuel" surcharge is associated with DHL SAME DAY

  deliveries by air and the gasoline fuel surcharge is  applicable to ground

  deliveries.  Plaintiff's Trial Br. at 24.  DHL counters that the document is not

  relevant as its sheds no light on the meaning of the term Air Express as that term

  does not appear in the document.  Defendants' Opposition Br. at 6.  Additionally,

  as the fees for DHL's Same Day Service are established outside the published

  DHL Fees, *see* Rate Guide, Plaintiff's Exh. 5 at 35 (DHL "fees are applicable to

  all services – Ground and Air Express – <u>with</u> <u>the</u> <u>exception</u> <u>of</u> <u>DHL</u> <u>SAME</u> <u>DAY</u> . .

  ..") upon customer request to DHL, *id.*, it is more reasonable to infer that the

  references to fuel surcharges in Plaintiff's Exh. 14 inform a prospective customer

  that DHL's special pricing, unpublished, for SAME DAY will include either the

"air" fuel or "ground" fuel surcharge to be determined by DHL when the order is placed in the process of accepting the SAME DAY delivery service order and selecting the particular mode of transportation necessary to meet the SAME DAY service guarantee for the shipment.  As such, the document is not relevant to the meaning of the term Air Express applicable to DHL's NEXT DAY and 2ND DAY expedited services subject to the contract at issue in this case.  Finally, by its terms, the notice is directed to DHL NEW customers effective October 1, 2008 making it inapplicable to Plaintiff and, as such, irrelevant.

- Historic Fuel Surcharge Document (Plaintiff's Trial Br. at 24-25).  According to Plaintiff, this document, Plaintiff's Exh. 15, provides data for DHL's "Air" and "Ground" fuel surcharges over a seven-year period, 2002-2009, arguing that the absence on the chart of the term Air Express, demonstrates that the DHL jet fuel surcharge requires the use of "air," transport as a basis for is application. Plaintiff's Trial Brief at 25.  Plaintiff's inference is undercut by the fact that in the chart, the relevant word air as it appears in the chart could also be an abbreviated form of Air Express given its proximity in the Chart with the word "Ground," a term closely associated with DHL's non-expedited delivery service category.  Because the word "Air," as used in the Chart could also reasonably refer to DHL's Air Express services, this document, at best, provides only ambivalent support to Plaintiff's asserted interpretation, insufficient to meet Plaintiff's burden of proof.

- February 2004 Press Release (Plaintiff's Trial Br. at 25).  As with Plaintiff's Exh. 15, Plaintiff's reliance on this document, Plaintiff's Exh. 26 at 2, which also fails to

mention the term Air Express, does not support Plaintiff's contention that the DHL

service category does not exist.  Rather, by referencing DHL's Next Day as one

of DHL's "Express Shipping Services," the document actually supports DHL's

position that its Next Day delivery options are an express, *i.e.*, "Time Definite

Product[ ]," *id.*, service category to which the jet fuel surcharge applies.  In

context, the absence of the word "air" from the "DHL Express Shipping Services"

heading therefore does not point to the conclusion as Plaintiff urges.  Moreover,

as the document is dated 2004, its relevance to the meaning of the Air Express

term in the 2008 Rate Guide at issue here is too attenuated to be probative of the

meaning of the term as used in the Rate Guide and other related contract

documents.

- DHL's "Straight Pass Through" Documents (Plaintiff's Trial Br. at 22-26).  These

  documents, Plaintiff's Exhs. 17-22, purport to explain DHL's business rationale

  for its fuel surcharges.  Plaintiff contends that because in these documents DHL

  represented to its customers the surcharges merely served to "pass-through,"

  Gibson Dep. 15:4-10; Plaintiff's Exh. 17 at DHLEXPO13724, ("The DHL FSC is

  only a cost pass through"), the respective fuel price increases to its customers

  and was not a price increase to enhance DHL's profitability, Gibson Dep. 26:15-

  19, the statements demonstrate that a pass-through of such costs only makes

  sense, according to Plaintiff, if the type of fuel, jet or diesel, was actually used in

  connection with a DHL delivery.  Plaintiff's Trial Br. at 26.  On its face, this

  argument has some appeal:  why should a fuel surcharge intended to potentially

  pass through fuel costs apply where no fuel subject to the specific pass through

applied was used in a customer's shipment?  *Id.*  But despite such facial appeal

Plaintiff's contention, on closer examination, fails because DHL's pass-through

rationale for its fuel surcharges does not support that DHL thereby intended to

associate the  applicability of a particular surcharge to a particular mode of

transportation, *viz.* jet fuel to airplane transport; diesel-fuel to truck transport,

rather than, as DHL maintains, to one of its delivery service options.  Thus,

although the document helps to understand why the surcharges exist; they do

not compel the conclusion that the DHL jet fuel surcharge be applied only in

cases where DHL transportation services involved the use of airplanes.

- DHL's Hank Gibson Testimony (Plaintiff's Trial Br. at 26-29).  In this argument,

  Plaintiff asserts Mr. Gibson's deposition testimony demonstrates that DHL's Air

  Express contract term is in fact ambiguous and that Plaintiff's proffered extrinsic

  evidence support's Plaintiff's position that it be construed to refer to DHL's use of

  air transport and not its expedited delivery services.  *Id.*  However, a careful

  reading of Mr. Gibson's deposition testimony reflects his view that DHL was

  authorized by its contract to allocate the jet fuel surcharge to DHL's expedited

  services regardless of whether a particular shipment may have been

  accomplished solely by ground transportation.  *See, e.g.,* Gibson Dep. 57:20-25;

  58:2 ("It never crossed my mind that we (DHL) were not. . . contractually

  authorized" to "charge its higher jet fuel surcharge for NEXT DAY shipments that

  travelled solely by ground . . .").  The court therefore discounts Mr. Gibson's

  deposition testimony on which Plaintiff relies as extrinsic evidence supportive of

  Plaintiff's position.

- DHL's Failure to Provide Drafting History (Plaintiff's Trial Br. at 29-30).  Plaintiff further argues that DHL's failure to provide any significant drafting history related to the contract documents supports an adverse inference that such failure indicates that the expected history would be inconsistent with DHL's asserted meaning in the term Air Express.  Defendants oppose this assertion on the ground that Plaintiff failed to raise this issue during the discovery period, Defendant's Opposition Br. at 7 n. 4, and because to support an adverse inference the responsive party, DHL, must be shown to have withheld the requested documents with a "culpable state of mind," and that the documents would, in fact, support the requesting party's claim.  *Id.* quoting *Residential Funding Corp. v. DeGeorge Fin. Corp*, 306 F.3d 99, 107 (2d Cir. 2002); *see also Chin v. Port Authority of New York & New Jersey*, 685 F.3d 135, 162 (2d Cir. 2012) (same).  Further, "a bare assertion that the[ ] documents are missing is not sufficient to "meet  . . . [Plaintiff's] burden."  *See In re Pfizer, Inc. Sec. Litig.*, 288 F.R.D. 297, 324 (S.D.N.Y. 2013).  The court's review of Mr. Gibson's deposition does not indicate Plaintiff directed any questions to Mr. Gibson on this issue to provide any support for Plaintiff's assertions.  As such, absent a showing that the alleged drafting history was culpably withheld by DHL, no adverse inference, as Plaintiff requested, will be drawn.

In sum, Plaintiff's extrinsic evidence is insufficient to meet Plaintiff's burden of proof that the term Air Express refers only to a DHL delivery mode using air transportation and excludes surface transportation of Plaintiff's packages by truck, even if it is assumed that such term as used in the contract is in fact ambiguous.

Conversely, as DHL maintains, the parties' course of performance under the contracts over 11 years demonstrate that Plaintiff had accepted DHL's application of the jet fuel surcharge to Plaintiff's NEXT DAY 3:00 PM deliveries despite knowing that its packages were being transported solely by truck.  DHL's Opposition Br. at 8-9.  In fact, in its Amended Complaint, Plaintiff alleged the jet fuel surcharge was 29% and the diesel fuel surcharge was 9.3%, Amended Complaint ¶ 42, and Plaintiff periodically compared DHL's charges with the "rate charges of its competitors."  Prieschel Dep. 60:23-25; 61:1. Plaintiff also assumed all its deliveries addressed to Wachovia were delivered by truck.  *Id.* 102:1-4.  Contrary to Plaintiff's objection that it was unaware of DHL's "fuel surcharge practices" or how its packages were being transported, Plaintiff's Opposition Br. at 30, Plaintiff could determine, based on the fuel surcharges appearing on the invoices that the fuel surcharges were at levels, *i.e.*, percentages, substantially higher than those DHL published for diesel fuel in the Fuel Surcharge Index, and related documents, that were available to Plaintiff on DHL's website.  Joint Fact Stipulation No. 6. (listing documents as "available on DHL's website").  While Plaintiff was aware DHL charged Plaintiff a fuel surcharge, *id.* 69:8, and that DHL's competitors, FedEx and UPS, had charged Plaintiff a fuel surcharge on deliveries these companies provided prior to 2005 when DHL became Plaintiff's exclusive delivery service provider, to Plaintiff, *id.*, 69:24-25; 70:1-3, Plaintiff never inquired of these companies how their respective fuel surcharges were constituted or applied to Plaintiff's invoices.  *Id.*, 77:20-25; 78:1-4.

Under New York law, Plaintiff's asserted lack of awareness of the details of the DHL's jet fuel surcharge policy is "no answer," *Evans v. Famous Music Corp.*, 807

N.E.2d 869, 874 (N.Y. 2004), where Plaintiff was aware it was being charged a fuel surcharge and had the ability to make inquiries concerning such invoiced charges. *See Jobim v. Songs of Universal, Inc.*, 732 F.Supp.2d 407, 417 (S.D.N.Y. 2010) ("claimed lack of awareness is not sufficient to rebut conclusions to be drawn from a course of performance over an extensive period of time" (citing *Evans*, 807 N.E.2d at 874)). *See also Continental Casualty Co. v. Rapid-American Corp.*, 609 N.E.2d 506, 511-12 (N.Y. 1993) (courts may imply awareness of a course of performance to a contracting party). Here, Plaintiff was aware (1) a fuel surcharge was being applied to its DHL invoices for the packages at issue, (2) the packages were being delivered via truck and not airplane, (3) the relative surcharge rates for DHL's jet fuel and diesel fuel surcharges could have been determined by Plaintiff based on DHL's invoices and by consulting the DHL Fuel Surcharge Index, information available to Plaintiff on the DHL website which would have resulted in Plaintiff learning it was invoiced the DHL jet fuel surcharge, rather than its diesel fuel surcharge, (4) FedEx and UPS, as Plaintiff's former delivery service providers, and beginning in 2008 UPS, its current provider, also charged Plaintiff a fuel surcharge, and (5) Plaintiff never inquired about the details of such surcharges nor did Plaintiff complain to DHL about the surcharge until advised by counsel.

Under these circumstances, Plaintiff's lack of awareness claim concerning the details of the disputed jet fuel surcharge as a ground to avoid consideration of DHL's extrinsic evidence of Plaintiff's course of performance with DHL must be rejected. *See Jobim,* 732 F.Supp.2d at 417 ("claimed lack of awareness is not sufficient to rebut the conclusions to be drawn from a course of performance over an extensive period of time" (citing *Evans,* 807 N.E.2d at 874)). *See also Continental Casualty Co.*, 609 N.E.2d 506,

511 (N.Y. 1993) (courts may imply awareness of a course of performance to a contracting party).  Thus, the nearly 11 year course of performance between the parties, without Plaintiff's objection or even inquiry regarding DHL's jet fuel surcharges strongly supports that the parties intended the jet fuel surcharge was linked to DHL's expedited services, including the NEXT DAY 3:00 PM delivery option selected by Plaintiff, regardless of whether any air transportation was involved and Plaintiff's packages were delivered solely by truck.  *See Federal Insurance Company v. Americas Insurance Company*, 691 N.Y.S.2d 508, 512 (1st Dept. 1999) ("the parties' course of performance under the contract is considered to be the 'most persuasive evidence of the agreed intention of the parties'" (quoting *Webster's Red Seal Publs. v. Gilberton World-Wide Publs.*, 415 N.Y.S.2d 229, 230, *aff'd,* 421 N.E.2d 118 (N.Y. 1981))).

DHL's second piece of extrinsic evidence, that customs and practice in the package shipping industry support DHL's interpretation of the contract, DHL Opposition Br. at 9-10, is also persuasive.  Specifically, DHL points to the record which indicates that DHL's major competitors, FedEx and UPS, like DHL, apply a similar jet fuel surcharge by category, not mode of service.  *Id.* at 9.  For example, both DHL and UPS use the term "air" to denote an expedited shipping category. *Id.* (citing Gibson Decl. ¶ 13; DHL Exh. C (UPS Rate Guide and Service Guide 11-12)).  Further, DHL, FedEx and UPS apply their respective jet fuel surcharges to their expedited delivery service categories.  *See* DHL Exh. D at 116 (jet fuel surcharge to be applied to FedEx Express, *i.e.*, next day, shipments; diesel fuel surcharge to be applied to FedEx Ground shipments); *see also* Facts, *supra*, at 17-18.  DHL, FedEx and UPS provided similar information regarding the fuel surcharge policies on their respective published

55

documents and website.  *See* Plaintiff's Exhs 5, 6 and 8 (DHL); DHL Exhs. C (UPS), D (FedEx), E (UPS), F (FedEx).  Thus, contrary to Plaintiff's contention, that the three major competitors in the package delivery industry maintain substantially, if not identical, fuel surcharge policies linked to expedited (jet fuel) and unexpedited (diesel fuel) delivery service categories, strongly indicates that DHL's interpretation of the disputed Air Express should prevail even assuming it were considered ambiguous, and Plaintiff has failed to demonstrate by a preponderance of the evidence that Plaintiff's interpretation is correct.

## CONCLUSION

Based on the foregoing, Plaintiff has no cause of action against Defendants as alleged in the Amended Complaint; the Clerk of Court shall enter judgment accordingly, and close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  March 26, 2015
        Buffalo, New York